(No. 29266.—

SAMMIE CARUTHERS, Appellant, *vs.* FISK UNIVERSITY, Appellee.

*Opinion filed May 21, 1946—Rehearing denied September 12, 1946.*

PRESCOTT, BURROUGHS & TAYLOR, and WERNER W. SCHROEDER, (A. M. BURROUGHS, and ULYSSES S. KEYS, of counsel,) all of Chicago, for appellant.

MYERS & SNERLY, and J. EUGENE LOEB, both of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

Appellant, Sammie Caruthers, by this action seeks a construction of the will of her aunt, Hattie C. Wilson, the quieting of title in herself to certain Chicago real estate known as 6033-35 South Michigan avenue, and an accounting for rents collected by the appellee on this real estate since the death of the testatrix. The appellant further seeks to recover from the university the sum of $6000, alleged to be the cost to the appellant of her college education. Appellant also seeks to recover the sum of $6251.36, the amount of the debts and costs of administration in the Hattie C. Wilson estate. This latter sum is claimed on the theory that the executor should have sold the South Michigan avenue property to satisfy debts and costs of

administration, rather than using the proceeds of certain bank accounts specifically bequeathed to appellant. Hearing had in the superior court of Cook county, largely on a lengthy stipulation, resulted in a decree dismissing the bill for want of equity and adjudicating the title to the South Michigan avenue property in the university.

Hattie C. Wilson died on September 8, 1936, a resident of Cook county. Her will, which was dated July 20, 1936, was admitted to probate in the probate. court of Cook county on November 2, 1936. After making provision for her funeral services and payment of debts, the testatrix, by the third paragraph of her will, provided as follows: "I give, bequeath and devise to Fisk University at Nashville, Tennessee, the building, which I own in the city of Chicago, County of Cook, and State of Illinois, and which is commonly known and designated as number 6033 and 6035 South Michigan Avenue, however, subject to the following condition: That the said Fisk University will educate my niece, Sammie Caruthers of number 1731 Scovel Street, Nashville, Tennessee, at the expense of said institution. It is my desire, that, if Fisk University accepts the above described real estate, my niece shall be granted the privilege of pursuing the studies leading to a college degree (or if she desires to go further, that said niece may even be allowed to earn a Master of Arts degree) and while she is so engaged said institution will not charge her any tuition or any of the other fees usually incidental to such courses of study; likewise, if it becomes necessary, said institution shall furnish my niece room and board while she is attending school at Fisk. Acceptance of the above set forth gift by Fisk University shall be taken as an agreement on the part of said institution to comply with the foregoing conditions of this gift."

After making other specific bequests and devises, including ones to Sammie Caruthers, the twelfth paragraph of the will provided that should any gift, bequest or devise

lapse or fail for any reason, the property so bequeathed or devised should go to the appellant, Sammie Caruthers.

On December 14, 1936, the board of trustees of Fisk University, by resolution, accepted the devise, and on December 31, 1936, furnished the executor of the estate with a copy of the resolution. The appellant graduated from high school, either in 1940 or the early part of 1941. On April 6, 1940, the dean of the University wrote the appellant, telling her that the university was ready and willing to comply with the terms of the will in regard to her education and stating that it would be glad to welcome her as a student. A copy of this letter was sent to the executor.

A similar procedure was followed by the university when on August 15, 1941, appellant was again advised by letter that the university stood ready, willing and able to comply with the terms and conditions of the will and again expressed the hope that she would enroll as a student. Copies of this letter were sent both to the executor and to the mother of the appellant. The university sent similar letters in 1941 and 1942. The appellant did not, however, attend Fisk University but rather enrolled in the Tennessee Agricultural and Industrial State College. The reason given for the failure to matriculate at Fisk University was that appellant desired to be a stenographer and that Fisk University did not teach shorthand and typing.

The appellant's contention that the university owes her some $6000 as the cost of her education in another institution, when viewed in the light of the third paragraph of the will and the facts in this case, cannot be sustained. It is apparent from a careful study of said paragraph that Hattie C. Wilson contemplated and intended a college education free of charge at Fisk University. In this case, the university did everything within its power to comply with the conditions imposed. The appellant's nonattendance at Fisk University was solely of her own choosing.

Appellant, as one of her points for reversal in this appeal, maintains that Fisk University, a Tennessee educational corporation, could not acquire, under its charter and the laws of the State of Tennessee, real estate by devise or otherwise, and that not having the power to take as devisee under the third paragraph, the twelfth paragraph of Hattie C. Wilson's will became operative.

Fisk University received its charter on August 24, 1867. The instrument is silent as to a right or power to acquire real estate by any means, devise or otherwise. This charter was under section 1472 of the act of the Tennessee legislature of 1857 to 1858. This section is as follows: "1472. Corporations created under this article may hold real and personal property, not exceeding in value fifty thousand dollars; may receive property by gift, will, or devise, holding the same for the purposes of their incorporations, with all the lawful conditions imposed by the donor; and may exercise such powers as are incident to private corporations."

In 1875 the legislature of Tennessee passed another act to provide for the organization of corporations. This act by section 1, among other things, provided that charters may be issued for the purpose of conducting educational institutions, such as Fisk University. Section 2 of the 1875 act gave such corporations the general power "to purchase and hold, or receive by gift, bequest, or devise, in addition to the personal property owned by the corporation, real estate necessary for the transaction of the corporate business, and also, to purchase or accept any real estate in payment, or in part payment, of any debt due to the corporation, and sell the same."

The General Assembly of the State of Tennessee in 1895, by an enactment entitled "An Act for the Benefit of Incorporated Educational Institutions," provided that all educational institutions incorporated by special act or under

the general laws of Tennessee, or those to be incorporated in the future, were given power and authority to acquire real estate by gift, bequest or devise for educational purposes, subject only to such limitations and conditions as the donor or testator might attach.

In 1911, the General Assembly of the State of Tennessee enacted what was then known as chapter 19, or Senate Bill No. 123, entitled "An Act to authorize and empower corporations heretofore created for the purposes of education or learning under the provisions of the Acts of the General Assembly of Tennessee enacted prior to the Adoption of the Constitution of said State adopted in the year 1870, to continue their corporate existence and to become vested with all the powers, rights, and privileges granted to and become subject to all the penalties, limitations and restrictions imposed upon corporations organized for the general welfare of society and not for profit by the Act entitled 'An Act to provide for the organization of corporations,' passed March 19, 1875, and approved March 23, 1875, and all subsequent acts amendatory thereof in lieu and in place of the powers, rights and privileges granted to and the penalties, limitations, and restrictions imposed upon said corporations as originally created."

Sections 1 and 2 of this act are as follows: "Sec. 1. *Be it enacted by the General Assembly of the State of Tennessee,* that any corporation heretofore created for the purpose of education or learning under the provisions of the Acts of the General Assembly of Tennessee enacted prior to the adoption of the constitution of said State adopted in the year 1870, which may at any time before the final dissolution of such corporation as provided by law desire to amend its charter for the purpose of continuing its corporate existence and becoming vested with all the powers, rights and privileges granted to, and becoming subject to, all the penalties, limitations and restrictions imposed upon corporations organized for the

general welfare of society and not for profit by the Act of the General Assembly of Tennessee entitled 'An Act to provide for the organization of corporations,' passed March 19, 1875, approved March 23, 1875, and all subsequent acts of said General Assembly as amendatory thereof in lieu and in place of the powers, rights and privileges granted to and the penalties, limitations and restrictions imposed upon such corporations as originally created shall have the right to do so by the Board of Trustees of such corporation making an application in these words: 'We, the undersigned, composing the Board of Trustees (here insert name of corporation) hereby apply to the State of Tennessee, by virtue of the laws of the land, for an amendment to the charter and memorandum of incorporation of said ————, whereby said corporation may continue its existence and become vested with all the powers, rights and privileges granted to and be and become subject to all of the penalties, limitations, and restrictions imposed upon corporations organized for the general welfare of society and not for profit by the Act entitled "An Act to provide for the organization of corporations," passed March 19, 1875, approved March 23, 1875, and all subsequent Acts amendatory thereof, in lieu and in place of the powers, rights and privileges granted to and the penalties, limitations and restrictions imposed upon said corporations as originally created. Witness our hands this, the —— day of ————, 19—.' (To be signed by all of the trustees.)

"Sec. 2. *Be it further enacted,* that the said application for an amendment shall be probated or acknowledged and recorded as provided by Section 26 and Section 23 of said Act of 1875, entitled 'An Act to provide for the organization of corporations,' passed March 19, 1875, approved March 23, 1875, as in case of application for original charters under said Act, and the certificate of registration given by the Secretary of State under the great

seal of the State shall, when recorded as required, complete the Act of amendment, and the validity thereof shall not in any legal proceedings be collaterally impeached or questioned, and said corporation shall thereafter continue to exist in the same manner as if it had been originally chartered under the said Act of 1875, entitled 'An Act to Provide for the Organization of Corporations,' or any subsequent Act amendatory thereof, and shall have the same powers, rights and privileges and none other, and shall be subject to the same penalties, limitations and restrictions and none other, as are granted to or imposed upon corporations organized for the general welfare of society and not for profit under said Act of 1875, or any subsequent Act amendatory thereof, and as if it had been originally chartered under said Act of 1875, or any Act amendatory thereof; nor shall it thereafter be subject to any of the penalties, limitations and restrictions imposed upon it as originally incorporated, save and excepting such as are embraced in and imposed by said Act of 1875, and all subsequent Acts amendatory thereof."

On November 23, 1911, Fisk University in proper compliance with the provisions of the 1911 act set out above, filed with the Secretary of State an amendment to its charter. It is unquestioned that this amendment complied with the laws of Tennessee and that the university acquired all the rights under the Act of 1875, and all subsequent amendatory acts.

In 1917, the State of Tennessee enacted the following legislation pertaining to educational corporations: "Section 1. *Be it enacted by the General Assembly of the State of Tennessee* that any Corporation hereafter chartered under the laws of Tennessee for religious, charitable, educational, missionary or other eleemosynary purposes and not for profit, shall have the power to receive property, real, personal or mixed, by purchase, gift, devise or bequest, sell the same and apply the proceeds toward the

promotion of the objects for which it is created, or to hold any such property and apply the income and profits toward such objects.

"Section 2. *Be it further enacted,* that any corporation heretofore chartered for any of the foregoing purposes desiring to avail itself of these powers shall submit the question to its directors or trustees at any regular meeting, or special meeting called for the purpose or to any regular or special meeting of its Executive Committee, and if a majority of said Directors, trustees or executive committee vote in favor of applying for the amendment it may then proceed to file a petition to the State of Tennessee for an amendment to its charter, signed and acknowledged by the directors, trustees or executive committee as herein required, and have same recorded in the Register's Office of the county where the principal office of the corporation is located; it shall then be recorded in the office of the Secretary of State and then returned for registration of the Secretary's certificate and the great seal of the state as required in original charters.

"Section 3. *Be it further enacted,* that upon such corporation amending its charter as above provided it shall have the powers herein granted."

A fundamental and established rule of law in this State is that bequests and devises for charitable purposes are looked upon with favor and all reasonable interpretations and inferences tending to uphold them are made by the courts. *Heuser v. Harris,* 42 Ill. 425; *Morgan v. National Trust Bank,* 331 Ill. 182; *Village of Hinsdale v. Chicago City Missionary Society,* 375 Ill. 220.

This case turns upon whether Fisk University under the statutory enactment set out above had the power to acquire real estate. If it had such power, the title to the real estate became vested in it at the death of Hattie Wilson, subject to being divested upon its failure to comply with the conditions attached. As indicated before, all con-

ditions laid down by the testatrix have been fulfilled. If, on the other hand, Fisk University possessed no power under the statutes of Tennessee to acquire real estate, then we are of the opinion that the doctrine formerly announced by this court in *Starkweather* v. *American Bible Society,* 72 Ill. 50, is applicable.

In the *Starkweather case,* certain devisees and heirs-at-law of Charles R. Starkweather maintained that a devise to the American Bible Society, a New York corporation, was void for lack of power in the society to acquire real estate by devise. This court was called upon to construe the charter of the society in the light of a section of the Statute of Wills of New York. There was no express provision in the society's charter to take real estate by devise. The Statute of Wills in New York, adopted in March, 1813, authorized devises to any person, or persons, except bodies corporate and politic. A later New York statutory provision provided that corporations might take, purchase and hold real estate but that no devise to the corporation should be valid unless such corporation be expressly authorized to take by devise. It was held in the *Starkweather case* that the prohibition against devises to the corporation went to the power of the society to hold real estate and that not possessing that power in New York, the society had no greater powers concerning land in Illinois. The decision in the *Starkweather case* is based on the proposition that the society was absolutely prohibited from taking any real estate by devise. In this case, there is no suggestion of a statutory prohibition against corporations of the nature of the Fisk University from acquiring real estate by devise or otherwise. We are further of the opinion, after a careful examination and analysis of the various statutory enactments as set out above, that the act of 1917 did not repeal and abrogate the right and power to take and hold real estate which Fisk

University had previously acquired under the acts of 1875, 1895 and 1911.

It is apparent that the purpose of the Tennessee General Assembly, in enacting the act of 1875, was to give to corporations organized, among other purposes, for the purpose of conducting a university, the right and power of acquiring real estate. It is likewise apparent that in passing the 1895 act dealing specially with incorporated educational institutions, the General Assembly of Tennessee intended to give to those educational corporations the power and authority to acquire real property in unlimited amounts, subject only to such limitations and conditions as the donor or testator might attach. Then in 1911, in another special enactment dealing solely with educational corporations, as set out above, the General Assembly of Tennessee provided a method by which existing corporations might continue their corporate existence and become vested with all the powers, rights and privileges granted by the act of 1875 and all subsequent acts amendatory thereof, among which powers was that of holding real estate. In order to qualify itself under the 1911 act, Fisk University complied with the statutory requirements and thereafter possessed the power to take and hold real estate by devise or otherwise. The 1911 enactment deals only with educational corporations already in existence and makes no mention of an institution to be incorporated in the future. Section 1 of the 1917 act, however, concerns itself solely with giving future educational, etc., corporations the power and authority to acquire real estate. This is the same power which was granted to existing corporations by the 1911 act. Section 2 of the 1917 act outlines the same procedure for the charter amendment as did the 1911 act, except in considerably less detailed form. It is important to note that this section 2 provides "that any corporation heretofore chartered for any of the foregoing purposes de-

siring to avail itself of these powers shall submit the question to its directors * * *." In 1917 Fisk University already had availed itself of the powers set out by section 1 of the 1917 act and, therefore, would have no reason in desiring to avail itself of that which it already possessed. Had Fisk University either failed to take advantage of the 1911 enactment or come into existence between 1911 and 1917, we could see some force in the appellant's argument. Here, however, the university had already taken the exact steps set out by section 2 of the 1917 act.

Repeals by implication are not favored and statutes will be construed so as to avoid implied repeal of one act by a subsequent enactment, if such a repeal can be avoided by any reasonable hypothesis. (*Village of Ridgway* v. *County of Gallatin,* 181 Ill. 521; *People ex rel. Mathews* v. *Board of Education,* 349 Ill. 390; *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506.) In the *Village of Ridgway case,* this court stated: "A repeal of the Act of 1872 can only result on account of such inconsistency between the two acts that they cannot both stand. Such a repeal is not favored in the law, and a later statute will never be held to repeal an earlier one, unless they cannot be reconciled. It is the duty of the courts to construe them so as to avoid repeal, if such a construction can be given, and a statute will never be held to be repealed by implication if it can be avoided by any reasonable hypothesis." In *People* v. *Board of Education,* 349 Ill. 390, we said: "Where two statutes are enacted which have relation to the same subject, the earliest continues in force unless the two are clearly inconsistent with and repugnant to each other or unless in the latest statute some express notice is taken of the former plainly indicating an intention to repeal it, and where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. * * * It is not enough to justify the in-

ference of repeal that the subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy. (*Kizer* v. *City of Mattoon,* 332 Ill. 545.)"

The express provisions of the 1917 enactment contain nothing as to repeal of former acts. To uphold the contention of the appellant would be to construe an act obviously remedial in nature as one also designed to take away valuable rights previously granted where no such intention appears. A reasonable hypothesis, in connection with the 1917 act, would be that it was designed to give future corporations powers granted by the 1911 act, and to provide for those existing corporations which did not take advantage of the 1911 enactment, and that it was not designed to take away corporate powers already in existence or to make their continued existence contingent upon retracing statutory steps already taken under a previous act. We are of the opinion that the act of 1917 was an enabling one and that the legislature of Tennessee did not intend, by implication or otherwise, to take away any power which previously existed.

Appellant urges further, as a point for reversal, that the trial court erred in excluding evidence as to certain conversations with the testatrix, both before and after the will was executed. The purpose of this testimony was to show that Hattie Wilson, by the third paragraph of her will, intended that Fisk University should be compelled to pay for the education of the appellant, whether or not appellant elected to attend Fisk University.

We have been cited to previously decided cases of this court, such as *Norton* v. *Jordon,* 360 Ill. 419; *Cahill* v. *Michael,* 381 Ill. 395, as supporting the principle that evidence of the surrounding circumstances is admissible for the purpose of placing the court in the position of the testator when the will was executed. Cases of this nature are concerned with situations where the language in the

will is either ambiguous or insufficient to clearly identify persons or subject matter. In the *Cahill case,* cited by appellant, we stated, at page 400: "In order to construe a will, the court will examine the surrounding circumstances for the purpose of placing itself in the position of the testator as it existed when the will was made. * * * But if the language of the will is clear the court will not consider surrounding circumstances for the purpose of varying an intention clearly expressed. * * * The intention of the testator is to be ascertained from the will itself. * * * And when the will is examined the court cannot begin by assuming a given intention upon the part of the testator. * * * The question always is, what is the meaning of the words used in the will?" As stated in *Smith* v. *Shepard,* 370 Ill. 491, and quoted in the *Cahill case:* "The intention of a testator manifested in his will is determined in two ways. One, by ascertaining his actual meaning from the words employed, to which all rules of construction give way, and the other, by finding his presumed intention gathered by the application of rules of construction applicable to all cases where the meaning is obscure, doubtful or uncertain." As stated before, we are of the opinion that the language used in the third paragraph of Hattie Wilson's will was neither ambiguous nor uncertain. It clearly shows an intention on her part to require Fisk University to afford the appellant a college education and not to charge her tuition or any other fees, and if necessary, to provide her room and board "while she is attending school at Fisk."

The procedure in the probate court of Cook county, objected to by the appellant on the trial in this case and on this appeal, cannot be considered here. The estate of Hattie Wilson was closed on October 19, 1943, and no appeal was ever taken from the order. The record indicates that the appellant, in the probate proceedings, was represented by a guardian *ad litem.* Prior to the entry of the order clos-

ing the estate, she had reached her majority and was represented by her attorney, the former guardian *ad litem* at the hearing on the final report. No facts are shown which would indicate that the order closing the estate and approving the acts of the executor was entered through fraud, accident or mistake.

We are of the opinion that the trial court was correct in dismissing the bill for want of equity and establishing the title to the South Michigan avenue real estate in the appellee.

*Decree affirmed.*