(No. 35326.—

SPAULDING SCHOOL DISTRICT No. 58 *et al.,* Appellants, *vs.* WAUKEGAN CITY SCHOOL DISTRICT No. 61 *et al.,* Appellees.

*Opinion filed January 22, 1960.*

352

Daily, J., dissenting.

J. E. Bairstow, of Waukegan, and R. W. Deffenbaugh, of Springfield, for appellants.

Gerald C. Snyder, of Waukegan, (Lewis D. Clarke, of counsel.) for appellees.

Mr. Justice Davis delivered the opinion of the court:

This case involves a dispute between two school districts over territory recently annexed to the city of Waukegan. The plaintiffs, Spaulding School District No. 58, herein called the Spaulding District, and its Board of Education filed a complaint in the circuit court of Lake County against the Waukegan City School District No. 61, herein called the Waukegan City District, and others, as defendants. They sought to enjoin the inclusion of certain territory in the Waukegan City District and other relief. The trial court dismissed the complaint on defendant's motion, and plaintiffs have appealed directly to this court in that the franchise of the Waukegan City District under its special charter is involved. *People ex rel. Doney* v. *The Village*

*of Skokie,* 15 Ill.2d 288; Ill. Rev. Stat. 1957, chap. 110, par. 75.

The disputed territory was formerly unincorporated and a part of the Spaulding District. It is undisputed, however, that it was annexed to and made a part of the city of Waukegan on April 23, 1958. It is the contention of plaintiffs that this annexation, without action by the county board of school trustees, did not detach the area from the Spaulding District. Defendants urge that the annexation of the area by the city automatically brings it within the Waukegan City District, because it is a special charter district.

The city of Waukegan was incorporated by a special charter enacted by the legislature on January 23, 1859, and its 29th paragraph provides: "All territory now or hereafter within said city shall be one school district, to be denominated 'The Waukegan City School District,' which shall be a school organization separate from the township, and shall receive directly its lawful share of all funds hereafter distributed by the school commissioner of Lake County, as townships may, to be by him paid to the city treasurer."

Section 32—31 of the School Code (Ill. Rev. Stat. 1957, chap. 122, par. 32—31) provides: "Any special charter district which desires to annex or disconnect territory, may proceed under the provisions of the Revised Cities and Villages Act; provided, however, that in all instances where a special charter has been granted to a city or village for the operation, conduct or maintenance of schools, that annexation to or disconnection of territory from such city and village, either heretofore or hereafter made, shall constitute annexation to or disconnection from said special charter school district."

It is the theory of plaintiffs that the 1945 revision of the School Code, and the 1951 enactment of articles 4A and 4B (Ill. Rev. Stat. 1957, chap. 122, articles 4A, 4B,)

effectuated a repeal of paragraph 29 of such special charter and section 32—31 of the School Code. If such is the case, then the charter of the Waukegan City District was thereby extinguished and the territory which had been embraced in such district thereupon became a school district under the School Code by operation of law. This involves the continued existence of the Waukegan City District and the creation of another district embracing the same territory. Consequently a franchise is involved. *People ex rel. Doney* v. *Village of Skokie,* 15 Ill.2d 288; *Winne* v. *People ex rel. Hess,* 177 Ill. 268.

Article 4A created a county board of school trustees, provided for their election, the organization of the board and similar procedural details. Article 4B provided for the creation of new school districts and the change of the boundaries of existing districts by the county board of school trustees. Plaintiffs contend that this legislation requires that any changes in the boundaries of school districts within Lake County must be made by the county board of school trustees.

In examining this contention, an historical approach to the legislation in this field is beneficial, for frequently the path of history clarifies legislative action. The special charter was granted to the city of Waukegan by the legislature in 1859 and provided for a school district coextensive with the limits of the city. Laws of 1859, p. 347.

Most school boundary changes were thereafter made by the township school trustees of the township or townships in which the district was situated. (Laws of 1889, p. 278, sec. 47; Laws of 1909, p. 354, sec. 46; Laws of 1927, p. 787, sec. 46; Laws of 1937, p. 1117, sec. 46; Laws of 1943, vol. 1, p. 1273, sec. 46; Ill. Rev. Stat. 1945, chap. 122, par. 4—30.) Where the boundary changes involved districts which were located in more than one township, concurrent action of the several boards of trustees, in which

the district was situated, was required. (Ill. Rev. Stat. 1945, chap. 122, par. 4—31.) This procedure rendered changes in boundaries in such districts both cumbersome and difficult.

However, after 1871, boundary changes in cities were accomplished under the provisions of the Cities and Villages Act, (Laws of 1871-72, p. 264, par. 1; Laws of 1901, p. 95, sec. 1; Laws of 1913, p. 135, sec. 1; Laws of 1927, p. 214, sec. 1; Laws of 1939, p. 414, sec. 1; Ill. Rev. Stat. 1939, chap. 24, par. 369,) and in 1941 the legislature specifically amended the School Law to also provide that any special charter district which desired to annex or disconnect territory may proceed under the Revised Cities and Villages Act, thereby correlating the provisions of the Revised Cities and Villages Act and the School Law. See: Laws of 1941, vol. 2, p. 475, sec. 1; Ill. Rev. Stat. 1941, chap. 122, par. 363.1; Ill. Rev. Stat. 1957, chap. 122, par. 32—31.

By the enactment of articles 4A and 4B, the legislature recognized the inadequacies of the system of township boards of school trustees, discontinued its use, and created a county board of school trustees with broad powers in connection with the change in school boundaries generally. Such county boards were given sole authority over all school boundary changes in the county, with two exceptions. School districts in cities of over 500,000 in population, which were organized under article 34 of the School Code, and "any school district whose school board has been given the powers of school trustees," were excluded. Ill. Rev. Stat. 1957, chap. 122, par. 4A—2.

At the time of the adoption of these articles, the only school boards possessing the powers of school trustees were school boards in special charter districts. The special charter of the city of Waukegan created an appointive school board and clothed it with substantially all the powers of a board of school trustees, including the power to hold title to and sell property, to collect all claims, and to sue.

Cf. Ill. Rev. Stat. 1957, chap. 122, par. 4—21 to 4—28, and Charter of City of Waukegan, Laws of 1859, secs. 29-39 incl., pages 347 to 350.

This historical background of changes in the school law which was an overall part of the legislative program to consolidate school districts, also indicates a legislative intent to give to the county boards of school trustees the powers formerly held by the various township boards of school trustees. However, the legislature did not abolish special charter school districts, but on the contrary repeatedly recognized their existence and continued their functions in full force and effect.

At the beginning of the legislative program to consolidate school districts and to encourage the creation of unit school districts, special charter districts afforded the best example of both unification and adequacy in size. In view of these facts and this background, we cannot agree that it was the intent of the legislature that either the special charter of the Waukegan City District or section 32—31 of the School Code were to be invalidated by articles 4A and 4B of the School Code.

It is well settled that a general law will not repeal a prior special act unless the two are irreconcilably inconsistent. The rules of statutory construction announced in *Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458, beginning at page 465, are especially applicable here: "As a general rule repeals by implication are not favored. (*Village of Glencoe* v. *Hurford,* 317 Ill. 203; *Brotherhood of Railroad Trainmen* v. *Elgin, Joliet and Eastern Railway Co.* 382 Ill. 55; *Caruthers* v. *Fisk University,* 394 Ill. 151.) An implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act, and therefore the last expression of law prevails, since it cannot be supposed that the law-making power intends to contradict and enforce laws which are contradictions. * * * In

accordance with this general rule it has been many times held that the earlier statute continues in force unless the two are clearly inconsistent and repugnant with each other, or unless in the later statute some express notice is taken of the former, plainly indicating an intention to repeal it. * * * The rule just announced applies to general statutes which appear to be in conflict, but there is another rule of statutory construction applicable when the later act is a general one, and it is contended that it repeals by implication a former special or local law, in which situation it is an established rule of construction that where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latest in date will not be held to have repealed the former, but the special will prevail in its application to the subject matter as far as coming within its particular provisions. [Citations.] The rule is strongly stated in *People ex rel. Hoyne* v. *Sweitzer,* 266 Ill. 459, as follows: 'It is only in cases where a statute is expressly repealed or where all cases are removed from under its operation, and the statute is thereby entirely abrogated by a later act, that the former act is repealed by the later one.' Approved in *People ex rel. Palmer* v. *National Life Insurance Co.* 367 Ill. 35; *Peoria and Eastern Railway Co.* v. *Wright,* 377 Ill. 626."

We find nothing incompatible in the special legislative provisions relating to this school district and the general provisions of the School Code pertaining to county boards of school trustees. The general provisions of article 4A—2 are not all encompassing, but rather specifically exclude special charter districts from their operation.

In *City of Waukegan* v. *Stanczak,* 6 Ill.2d 594, we noted that the special charter of the city of Waukegan was not abrogated by its adoption of the Cities and Villages Act in 1890 and that it remained in force insofar as it was not inconsistent with the general law. In the case at bar, neither the special charter nor sections 32—31 of

the School Code are inconsistent with article 4A and 4B and are not invalidated thereby. *Trustees of Schools* v. *Board of School Inspectors,* 214 Ill. 30.

Plaintiffs have urged that special charter school districts are obsolete and incompatible with the progress of education. Some concurrence of view in this contention is evidenced by the introduction of Senate Bill No. 293 and House Bill No. 411 at the last session of the legislature. These proposed bills would either have abolished or cut down the powers of special charter districts. However, such bills failed to pass and cannot afford us justification for invading the legislative prerogative and abolishing special charter school districts by judicial fiat.

Plaintiffs finally contend that even if the special charter is still in effect, annexation of territory requires joint action by both the city of Waukegan and the county board of school trustees. This contention is unsound. The city had authority to annex contiguous territory under the Revised Cities and Villages Act. Having done so, such territory became, *ipso facto,* part of the Waukegan City District under paragraph 29 of the city's special charter and section 32—31 of the School Code. Neither the annexation nor the self-executing provisions of the special charter, as implemented by section 32—31 of the School Code, required the concurrence of any other body. *Trustees of Schools* v. *Board of School Inspectors,* 214 Ill. 30.

We must therefore conclude that the trial court was correct in granting the motion to dismiss the complaint, and its decree is accordingly affirmed. *Decree affirmed.*

Mr. JUSTICE DAILY, dissenting:

While I agree with the result reached in the majority opinion, I am compelled to dissent for the simple reason that a franchise is not involved, within the meaning of section 75 of the Civil Practice Act, so as to give us jurisdiction to entertain the appeal.

It is fundamental that this court only has such appellate jurisdiction as is given to it by law, and that it must, of its own motion, inquire into jurisdiction even though such question has not been raised by the parties. (*Freese v. Jeffords,* 7 Ill.2d 189; *Central Standard Life Ins. Co. v. Davis,* 7 Ill.2d 266; *In re Estate of Kaindl,* 411 Ill. 608; *Liberty National Bank v. Metrick,* 410 Ill. 429; *Seeds v. Chicago Transit Authority,* 409 Ill. 566; *Perlman v. Thomas Paper Stock Co.* 378 Ill. 238; *People ex rel. Sweitzer v. Gill,* 364 Ill. 344.) Neither consent of the parties nor their desire that this court should consider a case can confer jurisdiction and, just as certainly, neither can the desires of this court. The present opinion totally ignores these principles.

As distinguished from the situation where the decision involves the continued existence of one municipal corporation and the creation of another, (*People ex rel. Doney v. Village of Skokie,* 15 Ill.2d 288; *Winne v. People ex rel. Hess,* 177 Ill. 268,) or where the proceeding is in *quo warranto* to determine whether a school district has been validly organized, (*People ex rel. Beedy v. Regnier,* 377 Ill. 562; *People ex rel. Koensgen v. Strawn,* 265 Ill. 292,) this court has consistently held that a franchise is not involved in detaching territory from one school district and attaching it to another, inasmuch as neither the legal existence nor the exercise of franchise privileges is put in issue. (*Community Unit School Dist. v. County Board of School Trustees,* 6 Ill.2d 320; *Trico Community Unit School Dist. v. County Board of School Trustees,* 6 Ill.2d 323; *People ex rel. Groff v. Board of Education,* 383 Ill. 166.) A proceeding of the latter type involves, rather, as the majority opinion in this case conclusively reflects, only questions relating to the construction of school laws to determine which of two lawfully organized school districts has authority over certain territory. *People ex rel. Groff v. Board of Education,* 383 Ill. 166.

There is no doubt but that the present case falls within the latter category, for it involves nothing more than the construction of statutes, the validity of which are not questioned, to determine which of the two school districts involved has authority over disputed territory. If the past decisions of this court are to be adhered to, a franchise is not involved. Nor, in the absence of an issue validly involving a franchise, can it be said that we may take jurisdiction merely to construe the statutes. Both under section 75 of the Civil Practice Act and the law which preceded it, this court has consistently held that questions relating to the application or construction of a statute do not confer jurisdiction to entertain a direct appeal. *Clark* v. *Kern,* 171 Ill. 538; *Perrine* v. *Bisch & Son,* 409 Ill. 175; *Taylor* v. *Krupp,* 14 Ill.2d 36.

Apart from my primary concern that we do not have jurisdiction on direct appeal in this case, the clear application of *People ex rel. Groff* v. *Board of Education,* 383 Ill. 166, and *Community Unit School Dist* v. *County Board of School Trustees,* 6 Ill.2d 320, and the total disregard by the majority of the rule of law they announce indicates to me, to use the words of Mr. Justice Roberts dissenting in *Smith* v. *Allwright,* "an intolerance for what those who have composed this court in the past have conscientiously and deliberately concluded, and involves an assumption that knowledge and wisdom reside in us which was denied to our predecessors." 321 U.S. 649, 666, 88 L. ed. 987, 999.

This feeling does not stem from this decision alone but from the tendency of numerous decisions in the recent past to ignore or overthrow, with resulting confusion to bench and bar alike, the concepts upon which the jurisdiction of this court upon direct appeal were based. Until *La Salle Nat. Bank* v. *County of Cook,* 12 Ill.2d 40, this court had consistently held that where the only question involved on appeal was the validity of a zoning ordinance as it applied to certain property, such question involved only the applica-

tion and construction of the ordinance and did not present a constitutional question so as to authorize a direct appeal. (*American Smelting & Refining Co.* v. *City of Chicago,* 409 Ill. 99; *Village of Riverside* v. *Kuhne,* 397 Ill. 108; *Pollack* v. *County of Du Page,* 371 Ill. 199.) Yet, in the *La Salle National Bank case,* it was held that such a question involves a construction of the constitution, even though the opinion did no more than to make a factual determination as to whether the zoning ordinance in that case, as applied to the property in question, bore a real and substantial relation to the public health, safety, morals and welfare.

Again, since *People* v. *McGowan,* 415 Ill. 375, in which I was the reluctant author of the court's opinion, we have taken jurisdiction of every misdemeanor involving a search and seizure, even though a decision on the issue did not call for a construction of the constitution, but called only for an application of existing and no longer debatable law to make a purely factual determination of whether a search was reasonable or unreasonable. Yet, where a misdemeanor was involved, our predecessors had held this court would not take jurisdiction merely to make the factual determination or to apply the settled constitutional law. (*People* v. *Totten,* 378 Ill. 385; *People* v. *Martens,* 338 Ill. 170; *People* v. *Hord,* 329 Ill. 117; *People* v. *Blenz,* 317 Ill. 639.) My sympathy goes out to counsel in a recent case who tried to reconcile the two lines of cases and concluded that he "could not fully perceive the rationale of the court."

Now we come to the present decision which unsettles what counsel and litigants had reason to believe was the settled law on the question of when a franchise was involved in school cases so as to give us jurisdiction upon direct appeal. To again quote from Mr. Justice Roberts in *Smith* v. *Allwright,* the growing practice of this court to disregard the settled precepts by which our jurisdiction has been heretofore determined "tends to bring adjudications of

this tribunal into the same class as a restricted railroad ticket, good for this day and train only." 321 U.S. 649, 669, 88 L. ed. 987, 1000.

We have no jurisdiction in this case and it should therefore be transferred to the Appellate Court.