Robert E. COOPER and Mariann Pogge, Trustee of the Bankruptcy Estate of Robert E. Cooper, Plaintiffs,

v.

WAL–MART STORES, INC., BSW Architects, Inc., Carl A. Nelson & Co., a corporation, Defendants.

CARL A. NELSON & CO., a corporation, Third–Party Plaintiff,

v.

MASCOUTEN CONTRACTORS, INC., d/b/a Cooper Electric, Third–Party Defendant.

No. 94–1274.

United States District Court, C.D. Illinois.

March 10, 1997.

Richard L. Steagall, Nicoara & Steagall, Peoria, IL, for Robert Cooper, Mariann Pogge.

James L. Hafele, Hafele Schmidt & Stephens, P.C., Peoria, IL, Scott E. Umland,

Hafele Schmidt Stephens Glancy, P.C., Peoria, IL, for Carl A. Nelson & Co.

Michael T. Reagan, Herbolsheimer Lannon Henson Duncan & Reagan, LaSalle, IL, for Mascouten Contractors Inc., Cooper Elec.

McDADE, District Judge.

### ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge [Doc. # 214] and Third–Party Plaintiff Carl A. Nelson's ("Nelson") Objection [Doc. # 215] to such recommendation. On November 7, 1996, Mascouten Contractors, Inc. d/b/a Cooper Electric ("Cooper Electric")[1] filed a Motion to Dismiss Counts II, III, and IV of Nelson's Third Amended Third–Party Complaint. The motion was brought on two grounds: (1) Counts II, III, and IV fail to state a cause of action because "Cooper Electric" is not a legally recognized entity with the capacity to be sued; and (2) Counts III and IV fail to state a claim for contractual contribution or breach of contract to defend under Illinois law.

On February 4, 1997, the Magistrate Judge issued a Report and Recommendation. As to the first issue regarding Cooper Electric's capacity to be sued, he concluded that this issue was timely raised by Cooper Electric's motion to dismiss but that such motion had to be converted to a motion for summary judgment so that the relevant facts could be further explored. Neither party has filed objections from this aspect of the Magistrate Judge's ruling. Because the Court finds no clear error in this ruling,[2] it adopts that portion of the Magistrate Judge's Report and Recommendation.

1. As indicated below, the connection between Mascouten and Cooper Electric opens a pandora's box in this case. Thus, for the sake of simplicity, the Court will refer to Third–Party Defendant as "Cooper Electric" for the remainder of this opinion.

2. The case law supports the idea that issues of capacity under Fed.R.Civ.P. 17(b) raised by a motion to dismiss are sufficient to state a negative averment under Fed.R.Civ.P. 9(a). *Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2499, 135 L.Ed.2d 191 (1996); *Board of Educ. of City of Peoria, Sch. Dist. No. 150 v. Illinois State Bd. of*

As to the second issue, the Magistrate Judge recommended that Counts III and IV of the Third Amended Third–Party Complaint be dismissed with prejudice. Nelson filed a timely objection from this finding, and the Court reviews this issue de novo pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R.Civ.P. 72(b).

### BACKGROUND

What started out as a rather simple negligence action has grown exceedingly more complex as this litigation has progressed. Plaintiff Robert E. Cooper ("Cooper") filed suit against three different defendants claiming negligence and violations of the Illinois Structural Work Act (SWA). After summary judgment, only the negligence claim against Defendant Nelson remains viable.

What complicates this case is that Nelson, the general contractor at the construction site where Plaintiff was injured, has filed a Third–Party Complaint against Cooper Electric, the subcontractor at the site which employed Plaintiff. The Third Amended Third–Party Complaint is presently before the Court. Counts I and II allege statutory contribution claims against Mascouten and Cooper Electric, respectively. Count III alleges a contractual contribution claim against Cooper Electric. Count IV alleges that Cooper Electric breached its contractual duty to defend Nelson against Plaintiff's claims of negligence.

Counts III and IV, which are the only counts at issue here, are premised upon paragraph 6(b) of the contract between Nelson and Cooper Electric which provides:

*Educ.,* 810 F.2d 707, 710 n. 4 (7th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987). However, because the capacity issue turns upon issues of fact, *Swaim,* 73 F.3d at 718; *Brown v. Keller,* 274 F.2d 779, 780 (6th Cir.), *cert. denied,* 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960), a summary judgment motion is the more appropriate manner in which to resolve the matter. *See also* Fed.R.Civ.P. 9(a) ("[T]he party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge").

The Subcontractor [Cooper Electric] further specifically obligates himself to the Contractor [Nelson] in the following respects, to-wit: . . . (b) To indemnify and defend the Contractor against and save him harmless from any and all claims, suits or liability for injuries to property, injuries to persons including death, and from any other claims, suits or liability on account of any act or omission of the Subcontractor, or any of his officers, agents, employees or servants . . .

In its Third–Party Complaint, Nelson contends that Cooper Electric committed a number of negligent acts or omissions against Plaintiff which proximately caused Plaintiff's injuries. Thus, in the event Nelson is found liable to Plaintiff, "it is just and equitable that COOPER ELECTRIC be found liable for such share of that verdict as is commensurate with its liability." Count III alleges that under the contractual indemnification provision in paragraph 6(b), Nelson is entitled to contribution from Cooper Electric "to the extent that NELSON is required to discharge any portion of COOPER ELECTRIC'S joint liability for any acts or actions on the part of COOPER ELECTRIC which proximately caused the injuries claimed by COOPER." Count IV alleges that pursuant to that same provision, Cooper Electric has breached its contractual duty to defend Nelson for an action brought against Nelson for Cooper Electric's own negligence.

### RELEVANT STATUTORY PROVISIONS

*Construction Contract Indemnification for Negligence Act ("Indemnification Act"):*

With respect to contracts or agreements [ ] for the construction, alteration, repair or maintenance of a building, structure [ ] or other work dealing with construction [ ], every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILCS 35/1 (1993).

*Joint Tortfeasor Contribution Act ("Contribution Act"):*

§ 2(a) [W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them . . . .

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury [ ], it does not discharge any of the other tortfeasors from liability for the injury [ ] unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement . . . .

740 ILCS 100/2 (1993).

*Code of Civil Procedure:*

(b) As used in this Section:

"Fault" means any act or omission that (i) is negligent, [ ] and (ii) is a proximate cause of [ ] bodily injury to person [ ] for which recovery is sought.

"Tortfeasor" means any person [ ] whose fault is a proximate cause of the [ ] bodily injury to person [ ] regardless of whether that person may have settled with the plaintiff . . . .

(e) This amendatory Act of 1995 applies to causes of action accruing on or after its effective date.

735 ILCS 5/2–1116 (as amended by P.A. 89–7, eff. March 9, 1995).

(a) In any action brought on account of [ ] bodily injury to person [ ] in which recovery is predicated upon fault as defined in Section 2–1116, a defendant is severally liable only and is liable only for that proportion of recoverable economic and non-economic damages, if any, that the amount

of the defendant's fault, if any, bears to the aggregate amount of fault of all other tortfeasors, as defined in Section 2–1116, whose fault was a proximate cause of the [ ] bodily injury [ ] for which recovery is sought. . . .

This amendatory Act of 1995 applies to causes of action accruing on or after its effective date.

735 ILCS 5/2–1117 (as amended by P.A. 89–7, eff. March 9, 1995).

## ANALYSIS

### The Indemnity Act Is Inapplicable Here

In *Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 555 (7th Cir.1989), the Seventh Circuit refused to enforce a contractual provision much like the one in the instant case:

> CONTRACTOR [Insulating] agrees to and shall protect, defend, indemnify and hold MARATHON harmless from and against any and all claims, demands, causes of action, damages, suits, costs, losses or expenses (including, but not limited to, attorney's fees) arising out of or in any way connected with, directly or indirectly, the performance of work hereunder by CONTRACTOR, including both acts and omissions to act by CONTRACTOR or any such subcontractor and their agents, servants or employees, respectively.

The clause was rejected for two independent reasons: (1) insofar as its effect was to force Insulating to indemnify Marathon for some or all of Marathon's own negligence, it ran afoul of the Indemnity Act, and (2) insofar as it sought to force Insulating to waive its right to take advantage of the good faith settlement provisions of the Contribution Act, it violated that Act as well. *Id.* at 556–59.

■ While both parties here make much ado about the first of these two grounds, the Court believes that it need not reach that issue at all. In *Braye v. Archer–Daniels–Midland Co.*, 175 Ill.2d 201, 222 Ill.Dec. 91, 99–100, 676 N.E.2d 1295, 1303–04 (Ill.1997) (not yet released for permanent publication), the Illinois Supreme Court determined that where a contractual provision is ostensibly one for indemnification, but reasonably can be read as one for contribution, the latter interpretation should be applied in order to render the agreement enforceable under the Indemnity Act.[3]

The drafter of the provision in that case was presumed to know that indemnity clauses are void in violation of public policy. *Id.* Because it was not readily apparent that "indemnity was the dominant aspect" of the provision, the contract could not be deemed "expressly contrary to the law or public policy." *Id.* at 99–100, 676 N.E.2d at 1303–04. Moreover, the fact that the Third–Party Complaint expressly sought "contribution pursuant to the Contribution Act" weighed in favor of treating the clause as one for contribution and not indemnification. *Id.* at 100, 676 N.E.2d at 1304. *See also Liccardi v. Stolt Terminals (Chicago), Inc.*, 283 Ill.App.3d 141, 218 Ill.Dec. 666, 673–74, 669 N.E.2d 1192, 1199–1200 (1st Dist.1996) (holding that contractual provision which arguably allowed for recovery according to parties' relative culpability was one for contribution and stating that "[t]he legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains"); *Herington v. J.S. Alberici Constr. Co.*, 266 Ill.App.3d 489, 203 Ill.Dec. 348, 351–52, 639 N.E.2d 907, 910–11 (5th Dist.1994) (same)

Here, paragraph 6(b) obligates Cooper Electric to "indemnify and defend [Nelson] . . . on account of any act or omission of [Cooper Electric] . . ." This is similar to the provision at issue in *Braye:* "[All Tri–R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri–R] . . ." 222 Ill.Dec. at 98, 676 N.E.2d at 1302.[4] In both cases, the implication is that the indemnitor is only liable for that portion of the judgment attributable to it. "It is hard to imagine a clearer example of contri-

---

3. Indemnity shifts the entire responsibility from one tortfeasor, who has been compelled to pay the loss, to another tortfeasor, who is truly culpable. By contrast, contribution allocates responsibility for the total loss among multiple culpable tortfeasors. *Stifle*, 876 F.2d at 558–59.

4. This sentence in *Braye* was preceded by the disclaimer, "except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence." However, the implication would be the same even without such a disclaimer.

bution as opposed to indemnification." *Stifle*, 876 F.2d at 559.[5]

Moreover, just as the third-party complaint in *Braye* alleged an action for contribution, *id.* at 99–100, 676 N.E.2d at 1303–04, Nelson's Third–Party Complaint here specifically alleges that Cooper Electric should "be found liable for such share of that verdict as is commensurate with its liability" and that Nelson is entitled to such contribution only "to the extent that NELSON is required to discharge any portion of COOPER ELECTRIC'S joint liability for any acts or actions on the part of COOPER ELECTRIC which proximately caused the injuries claimed by COOPER." The fact that paragraph 6(b) uses the word "indemnify" is irrelevant, *Liccardi*, 218 Ill.Dec. at 673–74, 669 N.E.2d at 1199–1200; *Herington*, 203 Ill.Dec. at 351–52, 639 N.E.2d at 910–11, and it is far from clear that Nelson truly meant to hold Cooper Electric responsible for Nelson's own negligence. Thus, the contract should be treated as one for contribution and is not void under the Indemnity Act. *Braye*, 222 Ill.Dec. at 99–100, 676 N.E.2d at 1303–04.

### There Is No Cause of Action For Contractual Contribution In Illinois

Having established that the instant action is one for contractual contribution, the next question is whether such an action can be maintained under Illinois law? The case law to date says that it cannot be. The Seventh Circuit in *Stifle* explained that such a cause of action would effectively waive the settlement provisions of the Contribution Act, 740 ILCS 100/2(c) & (d), in violation of the Illinois public policy of encouraging settlement. 876 F.2d at 556. The court succinctly stated the purpose of the Contribution Act as follows:

> [I]n order to encourage settlement, the Contribution Act provides that a tortfeasor which settles in good faith with an injured party is then absolved from any further liability. In that event, the amount of

consideration received by the injured party in settlement is offset against the judicially determined damage award, and the settling tortfeasor is discharged from all liability as well as from any previously held rights of contribution. The remaining tortfeasors are responsible for the injured party's damages as offset by the settlement, regardless of whether the settling tortfeasor's consideration equaled its proportion of the award. Assuming the settlement was in good faith, the settling tortfeasor may end up paying less in settlement than it would have if judicially deemed responsible. Consequently, the remaining tortfeasors that had foregone the opportunity to settle may be liable for greater amounts than if the settling tortfeasor had instead gone to trial.

*Id.* Subsequently, at least two Illinois appellate courts have held that a contractual contribution clause that fails to conform to the settlement provisions of the Contribution Act cannot form the basis for a separate cause of action under Illinois law. *See Herington*, 203 Ill.Dec. at 352–53, 639 N.E.2d at 911–912; *Pettie v. Williams Bros. Constr., Inc.*, 225 Ill.App.3d 1009, 168 Ill.Dec. 55, 60, 589 N.E.2d 169, 174 (2d Dist.1992).

■ Nelson attacks these cases on two separate grounds. First, it argues that a recent line of cases, including *Herington*, have held that an employer may contractually waive its legal right to limit a third-party plaintiff's contribution claim to the amount recoverable by the employee under the Worker's Compensation Act. *Braye*, 222 Ill. Dec. at 96–97, 676 N.E.2d at 1300–01; *Liccardi*, 218 Ill.Dec. at 670–71, 669 N.E.2d at 1196–97; *Herington*, 203 Ill.Dec. at 353, 639 N.E.2d at 912. Thus, parties should also be able to contractually waive their right to the settlement provisions of the Contribution Act.

■ The Court rejects this argument on the basis that there is a fundamental distinc-

---

**5.** While the Seventh Circuit in *Stifle* found that the provision in that case violated the Indemnification Act, it did not have the benefit of the Illinois courts' subsequent decisions in *Liccardi, Herington,* and particularly the decision of the

Illinois Supreme Court in *Braye*. Without deciding whether *Stifle* was correctly decided, the Court believes that the state of Illinois law at this point in time compels a different result.

tion between the two rights being waived. The right of an employer to limit the amount of a third-party plaintiff's recovery pursuant to the Worker's Compensation Act was judicially created by the Illinois Supreme Court in .*Kotecki v. Cyclops Welding Corp.,* 146 Ill.2d 155, 166 Ill.Dec. 1, 5, 585 N.E.2d 1023, 1027–28 (1991), and applies only if it is pleaded and proven as an affirmative defense. *Herington,* 203 Ill.Dec. at 353, 639 N.E.2d at 912 citing *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 764, 461 N.E.2d 382, 387 (1984).

There may be reasons for an employer to choose not to raise such a defense. *Id.* For instance, an employer may choose not to invoke the Worker's Compensation Act based on its expectation that the plaintiff's common law negligence claim will fail. This would enable the employer to evade liability completely because the judgment would bar any further recovery under the Worker's Compensation Act. *Braye,* 222 Ill.Dec. at 95–96, 676 N.E.2d at 1299–1300. Thus, if an employer is free to choose not to raise the issue as an affirmative defense, it is also free to contractually bargain that defense away. *Id.* at 96, 676 N.E.2d at 1300; *Liccardi,* 218 Ill.Dec. at 670–71, 669 N.E.2d at 1196–97; *Herington,* 203 Ill.Dec. at 353, 639 N.E.2d at 912. Nor is any policy of the Worker's Compensation Act offended by allowing an employer to waive its *Kotecki* rights. *Braye,* 222 Ill.Dec. at 96–97, 676 N.E.2d at 1300–01.

In contrast, the right to settle one's claims under the Contribution Act is automatic and need not be affirmatively raised by the party in order to retain such benefits. Likewise, the purpose of such legislation is to uphold the public policy of Illinois favoring settlement of claims. *Herington,* 203 Ill.Dec. at 352, 639 N.E.2d at 911 citing *Rakowski v. Lucente,* 104 Ill.2d 317, 84 Ill.Dec. 654, 658, 472 N.E.2d 791, 795 (1984). Thus, there is no inconsistency in allowing an employer to contractually waive its *Kotecki* rights and prohibiting a party from contractually waiving its right to obtain a good faith settlement under the Contribution Act.

■ Nelson's second argument in support of its contractual contribution claim is that

the Illinois legislature's recent amendment to 735 ILCS 5/2–1117 [6] directly contravenes the good faith settlement provisions of the Contribution Act, 740 ILCS 100/2(c) & (d), and renders them void. Section 2–1117, as amended, essentially abolishes the doctrine of joint liability in Illinois. Thus, in a negligence action, "a defendant is severally liable only and is liable only for that proportion of recoverable economic and non-economic damages, if any, that the amount of that defendant's fault, if any, bears to the aggregate amount of fault of all other tortfeasors, as defined in Section 2–1116 . . ." Section 2–1116 defines a "tortfeasor" as "any person [ ] whose fault is a proximate cause of the [ ] bodily injury to person [ ] *regardless of whether that person may have settled with the plaintiff."* 735 ILCS 5/2–1116(b) (emphasis added).

Nelson argues that in the absence of joint liability under Illinois law, there is no way that sections 2(c), (d) and (e) of the Contribution Act can be viable because they may lead to the shifting of a disproportionate share of fault to the non-settling defendants. Likewise, if every tortfeasor must now bear his own proportionate share of fault as compared to the aggregate amount of fault by all tortfeasors, regardless of whether those other tortfeasors have settled with the plaintiff, then a tortfeasor's liability cannot depend upon whether a codefendant has completed a good faith settlement under the Contribution Act. This argument has some logical appeal to it.

■ Yet, the Civil Justice Reform Amendments of 1995, P.A. 89–7, which include the amendments to sections 2–1116 and 2–1117 of the Code of Civil Procedure, do not expressly repeal sections 2(c), (d) or (e) of the Contribution Act. Instead, Nelson is arguing that such a repeal was made by implication alone. However, as a general rule, repeals by implication are not favored. *Lily Lake Road Defenders v. County of McHenry,* 156 Ill.2d 1, 188 Ill.Dec. 773, 776, 619 N.E.2d 137, 140 (1993). The Illinois Supreme Court has noted:

**6.** This amendment is effective as ·of March 9, 1995, and would apply to Nelson's Third–Party

Complaint here because it was originally filed on April 6, 1995.

Courts presume that the legislature envisions a consistent body of law when it enacts new legislation. Where there is an alleged conflict between two legislative enactments, this court has a duty to construe those statutes in a manner which avoids an inconsistency and gives effect to both enactments, where such a construction is reasonably possible. An implied repeal results only when the terms and necessary operation of a later statute are repugnant to and cannot be harmonized with the terms and effect of an earlier statute. In such circumstances, the subsequently enacted statute will repeal the former by implication, since it cannot be presumed that the legislature intended to enact laws which are contradictory.

*Id.* at 776–77, 619 N.E.2d at 140–41 (internal citations omitted); *see also Spaulding Sch. Dist. No. 58 v. Waukegan City Sch. Dist. No. 61*, 18 Ill.2d 351, 164 N.E.2d 63, 66–67 (1960).

One strong indication that the Illinois legislature did not intend that the Civil Justice Reform Amendments, P.A. 89–7, would repeal the settlement provisions of the Contribution Act is that P.A. 89–7 specifically addressed other sections of the Contribution Act. It created a new section 3.5 and amended sections 4 and 5 of the Contribution Act, but said absolutely nothing about section 2. The implication is that the legislature intended the good faith settlement provisions of the Contribution Act to remain in place.

■ Another factor to be considered is Illinois' strong public policy in favor of settlement. *Rakowski*, 84 Ill.Dec. at 658, 472 N.E.2d at 795. In order to find a repeal by implication here, the Court would have to believe that the Illinois legislature intended to reject a statutory provision which espoused that very favorable policy.

The Court cannot conclusively say that the amendments to 2–1116 and 2–1117 are "repugnant to and cannot be harmonized with" section 2 of the Contribution Act. *Lily Lake*, 188 Ill.Dec. at 777, 619 N.E.2d at 141. Sections 2–1116 and 2–1117 might simply be stating the general rule that a tortfeasor is responsible for his own share of the fault in relation to all other tortfeasors who proximately caused the injury. The inclusion of those tortfeasors who have settled with the plaintiff was merely meant to indicate that all tortfeasors must be accounted for, whether or not an actual judgment was rendered against them. However, the good faith provisions of the Contribution Act continue to create an exception to this rule for those defendants who have refused to join in a settlement when their codefendant has done so. The punishment for not settling is that the non-settling defendants might be forced to bear more than their proportionate share of fault, as set off by the settlement award. While Nelson's interpretation is also possible, the Court will not imply a repeal absent convincing evidence that this is what the legislature intended.

■ Another rule of statutory construction might be applicable here. Where one statute is general and one is specific, it does not matter which of the two statutes was enacted first; rather, the rule is that the more specific statute must prevail in relation to the subject matter unless the two statutes are "irreconcilably inconsistent." *Spaulding*, 164 N.E.2d at 67. The Contribution Act deals specifically with the manner in which a defendant may be absolved of all liability for contribution and shift some of his proportionate fault to his codefendants. 740 ILCS 100/2. Sections 2–1116 and 2–1117, by contrast, deal only with the general rule that a defendant is liable for his proportionate share of fault in relation to all other defendants who proximately caused the injury. 735 ILCS 5/2–1116, 2–1117. Thus, as the more specific statute, section 2 of the Contribution Act should be given precedence. As noted above, the Court does not believe that the two statutes are "irreconcilably inconsistent." *Id.*

In sum, because the Court cannot conclusively say that the Contribution Act and its underlying policy to encourage settlement fail to remain in effect, Nelson can only bring statutory contribution actions rather than contractual ones. Thus, the Magistrate Judge reached the correct result that Counts III and IV be dismissed with prejudice.

### *Waiver of Kotecki Protections*

Nelson notes in its objection that Cooper Electric should be found to have waived its *Kotecki* protections. There are two possible grounds for such a request: (1) Cooper Electric waived its *Kotecki* protections by failing to timely assert them as an affirmative defense to Nelson's Third–Party Complaint, *Herington,* 203 Ill.Dec. at 353, 639 N.E.2d at 912; *Doyle,* 77 Ill.Dec. at 764, 461 N.E.2d at 387, or (2) Cooper Electric contractually waived its *Kotecki* protections in paragraph 6(b) of the parties' agreement. *Braye,* 222 Ill.Dec. at 97, 676 N.E.2d at 1301. However, the Court believes that neither of these grounds have been adequately briefed by the parties, and the Court will allow them an opportunity to do so.

### *CONCLUSION*

IT IS THEREFORE ORDERED that Third–Party Plaintiff's Objection to the Report and Recommendation [Doc. # 215] is **DENIED.** The Report and Recommendation of the Magistrate Judge [Doc. # 214] is **ADOPTED,** as modified by this Order. Third–Party Defendant's Motion to Dismiss [Doc. # 199] is **GRANTED in part.** Counts III and IV of the Third Amended Third–Party Complaint are **DISMISSED with prejudice.**

IT IS FURTHER ORDERED that Third–Party Defendant is given fourteen (14) days in which to file a motion for summary judgment on the issue of Cooper Electric's lack of capacity to be sued. Third–Party Plaintiff is given fourteen (14) days in which to respond, and Third–Party Defendant is given an additional fourteen (14) days in which to reply. All summary judgment filings are subject to Local Rules 7.1(B) and (D).

IT IS FURTHER ORDERED that Third–Party Plaintiff is given fourteen (14) days in which to submit a brief or summary judgment motion (whichever is more appropriate) on the Kotecki issue raised by its objection. Third–Party Defendant is given fourteen (14) days in which to respond. If a summary judgment motion is submitted, Third–Party Plaintiff shall have an additional fourteen (14) days in which to reply.