ROBERT COX, Plaintiff, *v.* LUMBERMENS MUTUAL CASUALTY COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant.—(W. E. O'NEIL CONSTRUCTION COMPANY, INC., Third-Party Defendant-Appellee.)—AMERICO PASQUALE, Plaintiff, *v.* LUMBERMENS MUTUAL CASUALTY COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant.—(W. E. O'NEIL CONSTRUCTION COMPANY, INC., Third-Party Defendant-Appellee.)—MITCHELL FALCO, Plaintiff, *v.* LUMBERMENS MUTUAL CASUALTY COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant.—(W. E. O'NEIL CONSTRUCTION COMPANY, INC., Third-Party Defendant-Appellee.)

First District (3rd Division)   Nos. 81—1734, 81—1735, 81—1736 cons.

Opinion filed August 11, 1982.

644

Brydges, Riseborough, Morris, Franke and Miller, of Waukegan (Louis W. Brydges and John H. Krackenberger, of counsel), for appellant.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Robert Cox, Americo Pasquale, and Mitchell Falco, brought separate actions against defendant Lumbermens Mutual Casualty Company for personal injuries sustained on May 18, 1978, when they fell from a scaffold while working at a construction site. One count of each complaint alleged that Lumbermens was in charge of the work in progress at the site and that it wilfully violated the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60-68), by failing to erect safe, suitable and proper scaffolds or other temporary support for plaintiffs' protection. The other count charged negligence. Lumbermens filed a third-party complaint in three counts against plaintiffs' employer W.E. O'Neil Construction Company, seeking in count II contractual indemnification for any liability it might have to plaintiffs as a result of the principal action. The trial court granted O'Neil's motions to dismiss count II in each third-party complaint, and Lumbermens appeals. The three appeals have been consolidated.

Prior to May 18, 1978, Lumbermens and O'Neil contracted that O'Neil would act as contractor and construct the building project in question. Lumbermens alleged in count II of its third-party complaint that the alleged injury to plaintiffs was caused, not by any active negligence on its part, but by the negligence or omissions of O'Neil. The portion of the contract between Lumbermens and O'Neil on which Lumbermens bases it claim for contractual indemnity provides in pertinent part:

"To the extent permitted by applicable law, contractor shall assume all liability for, and shall protect, defend, indemnify and save harmless the Owner and the Architect and their Agents and Employees from all damages and liability including liability under the provisions of the Illinois Scaffold Act, Chapter 48, Section 60—69, Illinois Revised Statutes, 1965, for injury to any person or persons (including sickness, disease or death) and injury to, loss of use of, or destruction of tangible property (other than the work itself) and all property adjacent or neighboring the Owner's premises arising out of operations under their Contracts or those of their Sub contractors or anyone directly or indirectly employed by either of them during the term of their Contract or any extension thereof. In any and all claims against the Owner or the Architect (or any of their Agents or Employees) by any employee of the Contractor, any Sub contractor, anyone directly or indirectly employed by any of them or anyone [*sic*] whose acts any of them may be liable, the indemnification obligation herein shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Sub contractor under Workmen's Compensation Acts, disability benefit acts or other employee benefit acts. The obligations of the Contractor under this paragraph shall not extend to the liability of the Architect, his Agents or Employees arising out of the preparation of or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or the giving of or the failure to give directions or instructions by the Architect, his Agents or Employees providing such giving or failure to give is the primary cause of the injury or damage."

The trial court dismissed count II in each third-party complaint, finding that the contractual indemnity sought therein was condemned under the provisions of section 1 of the indemnity statute. (Ill. Rev. Stat. 1977, ch. 29, par. 61.) Section 1 voids as against public policy any contract or agreement to indemnify another person from that person's own negligence. On the authority of *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, the trial court recognized that a violation of the Structural Work Act was in essence a negligent act and therefore any contract providing for the indemnification of such violation was void pursuant to section 1.

■■ Relying on *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, Lumbermens first contends that the contract in question, strictly construed,

does not provide that Lumbermens be indemnified for its own negligence. In *Westinghouse* the court set out the general rule, prior to the enactment of section 1, that an indemnity contract should not be construed as indemnifying one against liability for his own negligence absent clear and explicit contractual language to that effect. Recognizing the extraordinary nature of the liability assumed by an indemnitor who agrees to such a provision, the court adopted this rule of strict construction against the indemnitee so as to limit the enforcement of such contractual provisions to situations in which the indemnitor was fully aware of the extent of his liability. Obviously, with the enactment of section 1, which prohibited contracts for the indemnification of a party's own negligence, the reason for the *Westinghouse* rule disappeared. It still applies, however, where an indemnity contract was executed prior to the date section 1 became effective. (*Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Quilico v. Union Oil Co.* (1978), 58 Ill. App. 3d 87, 374 N.E.2d 219; *Cotter v. Consolidated Construction Co.* (1977), 50 Ill. App. 3d 332, 365 N.E.2d 636.) In the present case, the contract was executed after the date section 1 became effective, and the *Westinghouse* rule is ineffective.

Lumbermens next contends that a party can violate the Structural Work Act by conduct that does not amount to negligence. It urges therefore that a contract requiring indemnification for violations of the Act should not be considered a *per se* violation of section 1.

Section 9 of the Structural Work Act provides for a cause of action only when there is a wilful violation or a wilful failure to comply with the statute. (Ill. Rev. Stat. 1977, ch. 48, par. 69.) Illinois courts have consistently held, however, that a wilful violation for purposes of section 9 requires neither wilful misconduct nor a reckless disregard of the statute's provisions. Rather, the term "wilful" has been interpreted to mean "knowing." (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868; *Juliano v. Oravec* (1973), 53 Ill. 2d 566, 293 N.E.2d 897.) A wilful violation is committed when a party in charge knows or when, in the exercise of reasonable care, he should have discovered the dangerous condition. (*Juliano v. Oravec.*) In *Davis v. Commonwealth Edison Co.*, the court recognized this judicial interpretation of "wilful" as typical negligence language and reasoned that the legislature, at the time it enacted section 1 of the indemnity statute, must have been aware that Structural Work Act violations had been so characterized. It therefore found that the legislature must have intended to include contracts for the indemnification of such violations within the prohibitions of section 1. The court also noted that a contract to indemnify against wilful miscon-

duct, as it is normally defined outside section 1, is contrary to public policy and unenforceable even absent a statute to that effect.

■■ ■ We reject Lumbermens' argument, however, that a cause of action can arise under the Structural Work Act from conduct which is less than negligent. Fault of some kind is required although it may range from passive negligence to wilful misconduct. The passive nature of a violation has been found relevant in determining whether or not the violator can seek indemnification from one who was more actively negligent. (*Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354; *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756.) It does not, however, operate to exempt the violator from the prohibitions of section 1. Allowing persons in charge of construction work to avoid liability by contract for their passive violations of the Structural Work Act would reduce any motivation they might have to lessen the extent of the danger. It would thereby prejudice the worker's safety, contrary to the purpose of section 1. *Davis v. Commonwealth Edison Co.*

■ The present contract specifically provides that O'Neil indemnify Lumbermens from all liability under the Structural Work Act. Such liability could only stem from either wilful acts or negligent acts. Since contracts to indemnify both types of acts are void as against public policy, the trial court correctly determined that the provision in question was void. *Davis v. Commonwealth Edison Co.*; Ill. Rev. Stat. 1977, ch. 29, par. 61.

Lumbermens relies on *Cotter v. Consolidated Construction Co.* (1977), 50 Ill. App. 3d 332, 365 N.E.2d 636, and *Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 410 N.E.2d 258, for the proposition that a contract requiring indemnity for liability under the Structural Work Act does not necessarily violate section 1. The contract in *Cotter*, however, was executed prior to the enactment of section 1, and the court never addressed the question at issue in the present case. And the holding in *Schuch* is contrary to *Davis v. Commonwealth Edison Co.* We, of course, follow *Davis*.

■■ We must note Lumbermens' argument that the saving language at the beginning of the contractual provision in question requires this court to presume that the parties intended to limit indemnification for Structural Work Act violations to those for which contractual indemnification is "permitted by applicable law." Since we find, however, that there are no Structural Work Act violations for which contractual indemnification is permitted, the saving clause would likewise operate to void the provision providing for such indemnification. Voidance of this provision, whether due to the saving clause

or to the prohibitions of section 1, requires dismissal of count II of the third party complaint.

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

WHITE, P. J., and RIZZI, J., concur.