CHARLES HIBBLER, Plaintiff, v. OCKERLUND CONSTRUCTION COMPANY *et al.*, Defendants (Ockerlund Construction Company, Defendant and Third-Party Plaintiff-Appellant, v. Ceisel Masonry, Inc., Third-Party Defendant-Appellee).

First District (4th Division)   No. 84—549

Opinion filed January 10, 1985.

Law Offices of Thomas P. McLaughlin, of Chicago (W. David Utley, of counsel), for appellant.

Burdick & Smith, of Chicago (Terry Norbert Tamillow, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The setting in this case is most familiar. The general contractor, Ockerlund Construction Company, entered into an indemnity agreement with the subcontractor, Ceisel Masonry, Inc. The agreement provided that Ceisel would indemnify Ockerlund for any claims of injuries for which Ockerlund might be responsible and which "may arise out of or on account of in consequence of the Sub-contractor's [*i.e.,* Ceisel's] performance of his contract." During the course of the construction, Ceisel's employee, Charles Hibbler, was injured. Hibbler then filed an action based on the Structural Work Act against the general contractor, Ockerlund. (Ill. Rev. Stat. 1977, ch. 48, pars. 60 through 69.) Ockerlund in turn filed a three-count complaint against Ceisel seeking indemnity based on an active-passive theory, contribution and on the express indemnification quoted above. On Ceisel's motion the trial court dismissed the count based on express indemnification. That is the only count in issue in this appeal.

There can be little doubt that the terms of this contract are covered by section 1 of "An Act in relation to indemnity in certain contracts," which provides that in every construction contract "every covenant, promise or agreement to indemnify or hold harmless another person [*i.e.,* Ockerlund] from that person's [*i.e.,* Ockerlund's] own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1977, ch. 29, par. 61.) Ockerlund, solely for the purpose of its third-party complaint, has alleged that it is negligent and that Ceisel has agreed to indemnify Ockerlund for Ockerlund's own negligence. This is the type of agreement that is proscribed by statute.

In *Davis v. Commonwealth Edison* (1975), 61 Ill. 2d 494, 498-99, 336 N.E.2d 881, the Illinois Supreme Court determined the above stat-

ute to be constitutional. In explaining its decision, the court used the instant factual setting as an example as to why in the construction trades it is against public policy for the general contractor to be indemnified for his own violations of the Structural Work Act. The court stated that such indemnification agreements diminish the general contractor's motivation to lessen the extent of the danger to an employee. Moreover, in *Cox v. Lumbermens Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 439 N.E.2d 126, the court stated that conduct that violates the Structural Work Act can be characterized as ranging from passive negligence to wilful misconduct and that all indemnification agreements for the above conduct are *per se* prohibited by section 1 (Ill. Rev. Stat. 1977, ch. 29, par. 61).

As interpreted by the above case law, the statute expressly forbids Ceisel from agreeing to indemnify Ockerlund for Ockerlund's own negligence. It is for that reason that the trial court properly granted Ceisel's motion to dismiss the count on express indemnification.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, J., concurs.

JUSTICE LINN, dissenting:

The majority reads the indemnity provision at issue as Ceisel agreeing to indemnify Ockerlund against Ockerlund's own negligence. While I readily concur that such an agreement would clearly be void pursuant to *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, and section 1 of the indemnity statute (Ill. Rev. Stat. 1983, ch. 29, par. 61), the instant provision simply is not such an agreement. For this reason, I respectfully dissent.

It is clear from the plain language of the indemnity agreement included in the Ceisel/Ockerlund contract that Ceisel expressly agreed to indemnify Ockerlund against Ceisel's negligence, not against Ockerlund's own negligence. Ockerlund alleged in its third-party complaint not, as the majority seems to interpret, that it was negligent, but that

> "10. If OCKERLUND CONSTRUCTION COMPANY is liable to Plaintiff, it will be solely because of the alleged nondelegable duty imposed upon it by reason of the Illinois Structural Work Act, rather than because of any act and/or omission regarding the work and/or materials and equipment involved.

11. If OCKERLUND CONSTRUCTION COMPANY is liable to Plaintiff it will be liable solely because of the acts of negligence and/or misconduct of the Third-Party Defendant, CEISEL MASONRY, INC., to-wit: its failure to adequately supervise Plaintiff's job; provide appropriate and stable scaffolds; provide sufficient, suitable and safe materials; provide tight toe boards and brackets, etc.

12. The conduct of the Third-Party Plaintiff, if any, within the meaning of the Illinois Structural Work Act is solely passive in nature whereas the conduct of the Third-Party Defendant is active."

Ockerlund further alleged in its count for express indemnity, after incorporating the paragraphs above, that by reason of the indemnity agreement entered into between it and Ceisel, it was entitled to express indemnity. That agreement, excerpted from the contract in somewhat more complete form than is presented in the majority opinion, reads as follows:

"Second INSURANCE. The *Sub-contractor* agrees to defend and/or indemnify and save harmless the owner, architect and General Contractor against any loss, expense or damage arising out of a claim or claims for injuries or property damage including death claims which may arise out of or on account of or in consequence of the *Sub-contractor's* performance of this contract. This clause is intended to cover any and all claims due to the *negligence* or claimed negligence of this said *Sub-contractor*, his employees, agents or servants.

Third INSURANCE. The *Sub-contractor* shall defend, protect and/or indemnify the said Contractor against any claim, loss or damage, including all expenses in connection therewith, suffered by or through the *negligence* of the *Sub-contractor*, his employees, agents or servants; in the event that there are any claims as above-mentioned, the Sub-contractor shall pay for any and all costs and expenses which the Contractor may have or be charged therefor ***." (Emphasis added.)

By enacting "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1983, ch. 29, par. 61 *et seq.*), the legislature manifested a clear intent to void exculpatory clauses that purport to indemnify a person from his own negligence in construction-related activities. (*American Pecco Corp. v. Concrete Building Systems Co.* (N.D. Ill. 1975), 392 F. Supp. 789.) It is well established that an indemnity contract will not be construed as indemnifying one against his own negligence unless such a construction is expressed in unequiv-

ocal terms. (*Fourfouris v. Standard Oil Realty Corp.* (1981), 100 Ill. App. 3d 162, 426 N.E.2d 915.) Nowhere in the above-quoted indemnity provisions, those at issue in the present case, do I find any clear or explicit language that states in unequivocal terms that Ceisel intended to indemnify Ockerlund against *Ockerlund's* own negligence. The plain language of this contract, and that upon which its meaning must be determined (*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230), renders such a construction wholly unsupportable.

The plain language of the indemnity statute reveals no legislative intent to render void indemnity agreements, such as the one at bar, in which an indemnitor agrees to indemnify or hold harmless an indemnitee from the *indemnitor's* negligence. The sole prohibition manifested by the clear and unambiguous language of section 1 is directed towards those agreements in which the indemnitor agrees to indemnify the indemnitee against the indemnitee's own negligence. Because no such agreement is found in the contract at issue, section 1 of the indemnity statute does not provide a valid basis upon which to strike with prejudice count II of Ceisel's third-party complaint.

Indemnity agreements such as the one at issue have repeatedly been upheld by our supreme court. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444; *Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 141 N.E. 739.)

> "There are many cases in which one party is held legally responsible for action by another that *** causes tortious injury to third persons, even though the party so held responsible did not desire the action or in any way instigate it. If such action occurs and he is held responsible to his loss, he ordinarily has a remedy over against the party who actually performs the illegal action; he is not regarded as in pari delicto. A bargain to indemnify him against losses so incurred is not illegal, whether given by the party actively guilty of the wrong or by a liability insurance company or other third party. *An owner or a principal contractor may be liable for harms caused by the negligence of *** the subcontractor; a contract of indemnity given by the one ultimately responsible for the negligence *** is not illegal.*" (Emphasis added.)

6A A. Corbin, Contracts sec. 1471 (1951), citing *Griffiths & Son Co. v. National Fireproofing Co.* (1923), 310 Ill. 331, 141 N.E. 739.

The indemnity agreement in *Griffiths*, a case recently relied on by our supreme court, *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, is essentially identical to the provision here at issue. There, a

general contractor and a subcontractor entered into a construction agreement wherein the subcontractor agreed to indemnify the general contractor for loss arising from any accident "occasioned directly or indirectly by the operations of the [subcontractor] or its sub-contractors." (310 Ill. 331, 332.) The *Griffiths* court first acknowledged that every contractor and subcontractor is equally bound by the Structural Work Act to comply with its provisions and that in the case of a "wilful failure to comply, each is liable to the party for any direct damages sustained by reason of such failure." The court then went on to uphold the agreement before it, finding that

> "there seems to be no basis for holding it contrary to public policy for *** subcontractors to indemnify original contractors against loss occasioned by the actual negligence of the indemnitors, even though such *** original contractors may have been themselves guilty of passive or constructive negligence. *** The contract in the present case does contemplate that an accident may happen through the negligence of the [subcontractor's] servants for which the [general contractor] may be liable, and provides that the [subcontractor] will indemnify the [general contractor] against such liability for the [subcontractor's] negligence. It is not contrary to public policy that the [subcontractor] should contract to pay the damages caused by its own negligence." 310 Ill. 331, 342, 141 N.E. 739, 743.

While *Griffiths* explains the theory of active-passive indemnification (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 454), both *Griffiths* and *Simmons* also appear to stand for the proposition that express indemnification agreements relating to claims arising under the Structural Work Act are not void as against public policy where the indemnitor agrees to indemnify the indemnitee against claims arising from the indemnitor's negligence. This interpretation of *Griffiths* and *Simmons* is consistent with the plain meaning of section 1 of the indemnity statute (Ill. Rev. Stat. 1983, ch. 29, par. 61) and with my reading of *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881.

In summary, while I fully agree with my colleagues that indemnity agreements that indemnify a person against that person's *own* negligence are void as against public policy and statutorily prohibited by section 1 of the indemnity statute, the agreement in the Ceisel/Ockerlund contract does not, by its plain language, purport to do so. For this reason, I respectfully dissent.