Danny STIFLE, Plaintiff–Appellee,

v.

MARATHON PETROLEUM COMPANY, Defendant–Third–Party Plaintiff–Appellant,

v.

INSULATING & MATERIALS CORPORATION, Third–Party Defendant–Appellee.

No. 88–2294.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1989.

Decided May 24, 1989.

Rehearing Denied June 26, 1989.

**554**

John Ewart, Craig & Craig, Mattoon, Ill., for defendant-third-party plaintiff-appellant.

Thomas Crosby, Winters Brewster Murphy Crosby & Patchett, Marion, Ill., D. Kendall Griffith, Bruce L. Carmen, Hinshaw Culbertson Moelmann Hoban & Fuller, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In this diversity action defendant and third-party plaintiff Marathon Petroleum Company appeals the district court's dismissal of its third-party complaint against Insulating & Materials Corporation. Chief Judge Foreman determined that an indemnity agreement between Insulating & Materials and Marathon was not applicable in a suit claiming that Marathon negligently caused job-related injuries to plaintiff Danny Stifle, an Insulating & Materials employee, and also alleging Marathon's violation of the Illinois Structural Work Act. The court later refused to allow Marathon to set off Stifle's subsequent $170,000 judgment against Marathon by the value of the workers' compensation lien which had been surrendered by Insulating & Materials as part of its settlement with Stifle. Marathon appeals both adverse decisions.

## I. Facts and Procedural History

Danny Stifle was employed by Insulating & Materials ("Insulating"), which had contracted to perform services at Marathon's refinery in Robinson, Illinois. While working at the Marathon site, Stifle suffered a back injury as the result of a fall while attempting to ascend a coal hopper by ladder. Insulating paid workers' compensation benefits to Stifle and consequently obtained a statutory lien equal to the amount of workers' compensation benefits received by Stifle as against any judgment or settlement Stifle might later obtain against Marathon. See Ill.Rev.Stat. ch. 48, ¶ 138.5(b).

Stifle later filed a two-count complaint against Marathon, alleging a violation of the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, ¶¶ 60–69, and common law negligence.[1] Marathon promptly filed a third-party complaint against Insulating, claiming, among other things, that Insulating was jointly negligent and that the two firms had an express agreement whereby Insulating had agreed to indemnify Marathon for such claims. Prior to trial, Stifle and Insulating announced that they had reached a settlement agreement in which Stifle agreed to forebear suing Insulating and in return Insulating agreed to pay $10,000 to Stifle and surrender its statutory lien equivalent to all benefits he received through workers' compensation.[2] The third-party complaint of Marathon against Insulating was then dismissed by Judge Foreman following his determination that the indemnification agreement had no application in a suit alleging negligence because of the adoption of comparative negligence and the right of contribution in Illinois, nor did the indemnification agreement apply to situations involving alleged violations of the Illinois Structural Work Act.

The Stifle–Insulating settlement also sparked a controversy over the proper amount to set off from whatever judgment Stifle might receive against Marathon. Prior to Stifle's Structural Work Act trial against it, Marathon argued the final judgment should be set off not only by the $10,000 paid by Insulating, but also by the value of the lien surrendered by Insulating. In response Stifle argued that Marathon

---

1. The negligence count was dismissed on the eve of the ultimate jury trial (Marathon App. 7).

2. There is no indication in the briefs nor were the parties certain when asked during oral arguments as to the amount of workers' compensation benefits received by Stifle.

should be responsible for his total amount of damages less only the $10,000. Before the commencement of the Stifle trial against Marathon, Judge Foreman ruled that he would allow only the $10,000 set-off, refusing to incorporate in the set-off the value of the statutory lien. The question of Marathon's liability under the Structural Work Act was decided by a jury, which returned a verdict for Stifle. Damages were stipulated at $180,000. Judge Foreman set off $10,000, and judgment was entered against Marathon for $170,000 in lieu of the $750,000 damages sought in Stifle's amended complaint.

Marathon appeals Judge Foreman's decisions dismissing its third-party claim premised on contractual indemnity against Insulating, and disallowing the value of the workers' compensation lien as part of the set-off against the final judgment against Marathon under the Structural Work Act.[3]

## II. Analysis

### A. Indemnification Agreement

As part of their contract for the work to be performed by Insulating at the Marathon plant, the two companies included an indemnity clause which reads:

XI. Indemnity:

CONTRACTOR [Insulating] agrees to and shall protect, defend, indemnify and hold MARATHON harmless from and against any and all claims, demands, causes of action, damages, suits, costs, losses or expenses (including, but not limited to, attorney fees) arising out of or in any way connected with, directly or indirectly, the performance of work hereunder by CONTRACTOR, including both acts and omissions to act by CONTRACTOR or any such subcontractor and their agents, servants or employees, respectively.

Consequently, following service of Stifle's complaint against it, Marathon filed a third-party complaint against Insulating, claiming that Marathon was entitled to indemnification for the portion of damages attributable either to a Structural Work Act violation or negligence on the part of Insulating. Following its settlement with Stifle, however, Insulating successfully moved for the dismissal of the third-party complaint. The district court held that the indemnity clause was inapplicable. Insulating argues that in light of the adoption of comparative negligence in Illinois, its indemnity clause is void in this construction contract under "An Act in relation to indemnity in certain contracts" ("Anti-indemnity statute"):

§ 1. With respect to contracts or agreements, either public or private for the construction, alteration, repair or maintenance of a building, structure or highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

Ill.Rev.Stat. ch. 29, ¶ 61. Insulating asserts that liability to Stifle should be apportioned according to the principles of comparative negligence and the rights of contribution.

■■■ Stifle's statutory claim against Marathon was premised upon Section 9 of the Illinois Structural Work Act, Ill.Rev. Stat. ch. 48, ¶ 69, which provides for a cause of action only when there is a wilful violation or a wilful failure to comply with the statute, *Cox v. Lumbermen's Mutual Casualty Co.*, 108 Ill.App.3d 643, 646, 64 Ill.Dec. 197, 439 N.E.2d 126 (1st Dist.1982); the Act does not comprehend strict liability, *Allison v. Shell Oil Co.*, 113 Ill.2d 26, 35, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986). Despite the Act's "wilful" language, courts have consistently determined that a violation will be found when a party in charge was aware, or in the exercise of reasonable care should have been aware, of the claimed dangerous condition, which amounts to a typical negligence theory. *Davis v. Commonwealth Edison*, 61 Ill.2d 494, 336 N.E.2d 881 (1975); *Cox*, 108 Ill.

---

**3.** Stifle has filed a brief and argued orally that Marathon should receive the $10,000 set-off but no more. This argument is discussed in Part II.B. of this opinion.

App.3d at 646, 64 Ill.Dec. 197, 439 N.E.2d 126. Consequently, liability under the Act will be occasioned when a party is shown to have acted negligently, but not necessarily intentionally.

▇▇▇ Generally when an injury results from the negligence of multiple parties, the entire liability attaches jointly and severally, each tortfeasor being responsible for the whole amount of the injured party's damages with a corresponding right to sue the other tortfeasors for contribution. The adoption of comparative negligence, see *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981), has left this general rule unchanged, but comparative negligence attempts ultimately to assess each tortfeasor its proportion of the damages, derived by a determination of the parties' relative fault.[4] However, in order to encourage settlement, *Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791 (1984), the Contribution Act, Ill.Rev.Stat. ch. 70, ¶ 301 *et seq.*, provides that a tortfeasor which settles in good faith with an injured party is then absolved from any further liability. In that event, the amount of consideration received by the injured party in settlement is offset against the judicially determined damage award, and the settling tortfeasor is discharged from all liability as well as from any previously held rights of contribution. The remaining tortfeasors are responsible for the injured party's damages as offset by the settlement, regardless of whether the settling tortfeasor's consideration equaled its proportion of the award. Assuming the settlement was in good faith, the settling tortfeasor may end up paying less in settlement than it would have if judicially deemed responsible. Consequently, the remaining tortfeasors that had foregone the opportunity to settle may be liable for greater amounts than if the settling tortfeasor had instead gone to trial.

Marathon contends that in this latter circumstance an indemnification agreement in which the indemnitor promises to indemnify the indemnitee for the indemnitor's negligence should be allowable. The above-quoted indemnification clause purportedly does not indemnify Marathon against its own negligence; rather, it seemingly indemnifies Marathon against Insulating's negligence. Judge Foreman thus found the Anti-indemnity statute inapplicable and determined that the indemnification agreement was a mere restatement of the Contribution Act and, as such, duplicitous.

▇▇▇ We disagree with that analysis. The Contribution Act does not provide a tortfeasor the uncompromised right to seek contribution from another. Rather, the right to contribution, although not set-off, is eclipsed by a settlement. In contrast, the indemnification agreement here provides for unqualified contribution, without regard to settlement. Moreover, because of the concept of joint and several liability, the above-quoted Anti-indemnity statute is applicable to instances such as the one before us. When multiple tortfeasors are found jointly and severally liable, each is responsible for the entire amount of the injured party's damages. Joint and several liability is a determination that but for each tortfeasor's negligence, the injury would not have occurred.[5] Although Illinois' scheme of comparative negligence may ultimately apportion liability by degree of fault among the multiple tortfeasors, initially each tortfeasor having caused the injury is nonetheless responsible to the injured party for the whole of his damages, lessened only by whatever satisfaction the injured party may have already received. See Restatement of Torts 2d § 886A, Comment h. Accordingly, a tortfeasor may be ordered to pay one hundred percent of the

---

**4.** The Structural Work Act provides a narrow exception to the general principle of comparative negligence. In order to ensure safety in the workplace and complete relief to employees working in hazardous areas, an injured party's own negligence is excluded from the analysis and thus does not lessen the other negligent parties' liability. *Simmons v. Union Electric,*

104 Ill.2d 444, 85 Ill.Dec. 347, 473 N.E.2d 946 (1984).

**5.** See Restatement of Torts 2d § 875 ("Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm."); Prosser, Torts § 47 at 297 (4th ed. 1971).

damages for injuries which the tortfeasor caused even though that same tortfeasor's degree of fault may be assessed to have been only ten percent, allowing it eventually to recoup ninety percent of the damages from the other tortfeasors through the Contribution Act.

The indemnification agreement between Marathon and Insulating, in which Insulating agreed to indemnify Marathon only for Insulating's negligence arising from its work performance, implicates considerations underlying both comparative negligence and the Anti-indemnity statute. Marathon argues that the agreement merely obligates Insulating to pay for its share of the loss as determined under comparative negligence principles, regardless of a prior settlement. In this sense, Insulating simply contracted away its right to foreclose contribution following a good faith settlement. But the indemnification contract would have the result of diminishing Marathon's liability—imposed upon Marathon due to its own negligence—not simply reimbursing Marathon for damages for which Marathon is without responsibility. If Marathon was not negligent, and thus without responsibility for the injuries, then it would not be liable for any damages. Its liability to Stifle is not premised upon, nor even increased by, Insulating's negligence; rather, liability remains firmly rooted in its own negligence. The indemnification agreement is seemingly consistent with the adoption of comparative negligence and yet at odds with the Anti-indemnity statute.

The question before us, whether a party liable under the Structural Work Act [6] may shift a portion of its liability to another negligent party by prior express agreement, has never been squarely addressed by the Illinois Supreme Court and the Illinois appellate courts are apparently in some disagreement as to the appropriate answer. The First District has responded that such indemnification would undermine the Anti-indemnity statute. Beginning with *Cox, supra,* the First District held that "there are no Structural Work Act

violations for which contractual indemnification is permitted." 108 Ill.App.3d at 647, 64 Ill.Dec. 197, 439 N.E.2d 126. But in *Cox* the third-party plaintiff argued that its liability was vicariously premised, not the result of its own negligence, and the contract under which it was suing provided that it would be indemnified for all liability arising out of a Structural Work Act violation. After determining that liability only resulted following a determination that the party itself was negligent, the court reasoned that indemnification of the entire amount would violate the Anti-indemnity statute. Similarly, the First District held void a comparable indemnification agreement in *Hibbler v. Ockerlund Construction Co.,* 130 Ill.App.3d 30, 85 Ill.Dec. 229, 473 N.E. 2d 597 (1st Dist.1985). See also *Ryan v. E.A.I. Construction,* 158 Ill.App.3d 449, 110 Ill.Dec. 924, 511 N.E.2d 1244 (1st Dist. 1987) (even if the indemnitee is only passively or technically negligent, enforcing contractual indemnity provisions would enable indemnitee to seek indemnity for its own wilful violation of the Act); *Shaheed v. Chicago Transit Authority,* 137 Ill.App. 3d 352, 92 Ill.Dec. 27, 484 N.E.2d 542 (1st Dist.1985). Justice Linn, however, dissented in *Hibbler* after determining that the indemnification agreement only indemnified against the indemnitor's negligence—not the indemnitee's as the majority decided. In contrast to the majority, which held that *Cox* stands for a *per se* rule against all such indemnification agreements, Justice Linn would allow those agreements which indemnify against the indemnitee's negligence, which is arguably the situation before us. 130 Ill.App.3d at 32, 85 Ill.Dec. 229, 473 N.E.2d 597 (Linn, J., dissenting). The Fifth District apparently is in accord with the First District's determination to hold void all indemnification agreements under the Structural Work Act. See *Long v. Bucyrus-Erie Co.,* 112 Ill.App.3d 578, 68 Ill.Dec. 290, 445 N.E.2d 934 (1983); but cf. *Peoples v. Granite City Steel Co.,* 109 Ill.App.3d 265, 282, 64 Ill.Dec. 811, 440 N.E.2d 363 (5th Dist.1982).

---

**6.** Since liability under the Structural Work Act does not attach absent negligence, the analysis for the common law negligence claim is the same.

Recently, the Fourth District decided *Dixon v. Northwestern Publishing Co.,* 166 Ill.App.3d 745, 117 Ill.Dec. 581, 520 N.E.2d 932 (1988), which is at odds with the First District's earlier interpretations. In *Dixon,* the Fourth District was presented with an issue similar to ours: whether, in a Structural Work Act claim, it was proper to dismiss a third-party complaint based on contractual indemnity following settlement. The Fourth District, without citing *Cox,* determined that dismissal was improper because, while the Illinois Supreme Court had invalidated the doctrine of implied indemnity in *Allison,* "the supreme court specifically stated that its decision was not meant to affect ... situations where indemnity is sought based upon an express agreement." *Dixon,* 166 Ill.App.3d at 752, 117 Ill.Dec. 581, 520 N.E.2d 932, citing *Allison.* But the Fourth District's opinion is less than clear. Although the court determined that the indemnity clause was not affected by the Contribution Act, it later noted that execution of the settlement precluded an indemnity award in favor of the indemnitee. However, while an indemnity award was precluded, the *Dixon* court ultimately refused to dismiss the indemnitor who had previously settled because the relative faults of the indemnitor and indemnitee still remained to be determined. *Id.* at 753, 117 Ill.Dec. 581, 520 N.E.2d 932.[7]

Our responsibility is, of course, to apply the rule of law consonant with the manner that the Illinois courts would decide this case. In lieu of an Illinois Supreme Court decision on this matter, we should follow an intermediate state appellate court's ruling on state law, "unless there is other persuasive data that the highest court of the state would decide otherwise." *Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 1428–1429 n. 3, 99 L.Ed.2d 721 (1988), quoting *West v. American Telephone & Telegraph,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). The onus here, in light of conflicting opinions in the state intermediate appellate courts, is to determine which approach the Illinois Supreme Court would likely adopt.

■ We are persuaded that the Illinois Supreme Court would likely follow *Cox.* Aside from being the most established line of reasoning, it is also the most forceful under Illinois law and policy. As an initial matter, the term indemnity is applied in a curious fashion. "Indemnity is a common law doctrine which shifts the entire responsibility from one tortfeasor, who has been compelled to pay the loss, to another tortfeasor, who is truly culpable." *Playskool, Inc. v. Elsa Benson, Inc.,* 147 Ill.App.3d 292, 297, 100 Ill.Dec. 837, 497 N.E.2d 1199 (1st Dist.1986), citing *Smith v. Clark Equipment Co.,* 136 Ill.App.3d 800, 804, 91 Ill.Dec. 520, 483 N.E.2d 1006 (1st Dist. 1985), and Prosser, Torts § 51 at 310 (4th ed. 1971). Indemnity can be express, arising out of agreement of the parties, implied by operation of law, or implied by the courts based upon the theory of active-passive negligence.[8] *Playskool,* 147 Ill.App.3d

---

7. The *Dixon* court also relied upon the settlement agreement between the plaintiff and the indemnitor, which provided that the plaintiff, should he obtain judgment against the indemnitee, would not execute any portion of a final judgment which would cause the indemnitor to be responsible for contribution or indemnification. We fail to understand how this settlement agreement between the plaintiff and third-party defendant, which implicitly endorses the indemnification agreement's superiority over the Contribution Act, casts any light on whether the express indemnification agreement between the defendant and third-party defendant is void.

The only other authority relied upon by Marathon is *Stephan v. Sears, Roebuck & Co.,* 147 Ill.App.3d 833, 837, 101 Ill.Dec. 363, 498 N.E.2d 687 (1st Dist.1986), for the proposition that "[e]xpress indemnity remains alive and well in this state," but since *Stephan* did not involve a Structural Work Act claim and thus did not implicate the Anti-indemnity statute, we attach to it limited importance, particularly in light of the First District's clear and repeated pronouncements that indemnification agreements are void in claims involving the Structural Work Act.

8. Implied indemnity based upon the active-passive doctrine of negligence was a method of bridging the often harsh results of affixing liability under the contributory negligence scheme. "Because active-passive indemnity is contributory negligence and last clear chance incarnate ... [and since Illinois has] adopted comparative negligence and the principles of apportioning rather than affixing liability ... and by the Contribution Act, the need for implied indemnity based upon an active-passive

at 297, 100 Ill.Dec. 837, 497 N.E.2d 1199. In contrast, contribution allocates responsibility for the total loss among multiple culpable tortfeasors. See Restatement on Torts 2d, § 886B Comment a ("A suit for contribution is brought for the recovery of a proportionate part of the sum paid by the plaintiff, on the ground that the parties were both guilty of negligence and should share the costs.... A suit for indemnity is brought to recover the total amount of the payment by the plaintiff, on the ground that the plaintiff's conduct was not as blameworthy as the defendant's"). The indemnification agreement between Marathon and Insulating required Insulating to indemnify Marathon for all liabilities arising from Insulating's work performance. The liability which Marathon has incurred as a result of Stifle's claim is due to Marathon's negligence, hence culpability, and not Insulating's work performance, since liability under the Structural Work Act only arises out of negligence and not vicariously. And Marathon, even under its interpretation of the indemnity agreement, would not be able to shift the entire amount of its liability. Rather, it could only shift that portion of its liability which is attributable to Insulating's degree of fault. It is hard to imagine a clearer example of contribution as opposed to indemnification.[9] See Harper, James & Gray, The Law of Torts § 10.2 at 60 (2d ed. 1986) (only contribution permissible when parties equally at fault).

 The indemnification agreement, as it purports to indemnify Marathon for liability arising exclusively from Insulating's work performance, would not run afoul of the Anti-indemnity statute. But the interpretation Marathon is urging would effectively convert the indemnification agreement into an agreement for con-

tribution without the statutory foreclosure upon a good faith settlement central to the Contribution Act. The underlying implication is an attempt to uphold an express agreement to reimburse Marathon for liability directly attributable to its own negligence, not liability imposed vicariously or strictly. A contract purporting to relieve a tortfeasor of some or all of its liability, premised upon its own negligence, cannot stand in light of the Anti-indemnity statute. Consequently, the jury's determination that Marathon's negligent Structural Work Act violation caused Stifle's injuries renders it liable for the whole extent of his damages, subject only to a set-off equal to the consideration Stifle received in settlement from Insulating. The indemnification agreement, insofar as it purports to indemnify Marathon for liability arising out of a tort for which Marathon is responsible, is unenforceable. Judge Foreman was, therefore, correct in dismissing the third-party complaint.

### B. Amount of Set–Off

Marathon also appeals the refusal of the district court to award as a set-off from the $170,000 Stifle judgment the value of the workers' compensation lien, as it did with the $10,000 paid by Insulating to Stifle. Marathon argues that by surrendering its workers' compensation lien, Insulating transferred valuable consideration to Stifle, the value of which should be deducted from the judgment against Marathon. Conversely, Stifle contends that the lien is part of workers' compensation benefits which are derived from a collateral source and should not be set off from the later judgment. Furthermore, Stifle argues that the lien at the time of settlement had no value, since at that time it secured only a poten-

---

distinction has also evaporated." *Allison v. Shell Oil,* 113 Ill.2d 26, 35, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986).

**9.** In this regard, the agreement seems much more akin to the implied indemnity scheme which was essentially legal art to avoid the harshness of the contributory negligence scheme, and not true indemnification. See *supra* note 8. Of course, if Marathon was held liable for an incident in which it had no culpa-

bility—which could not be the case here since liability is only imposed upon negligent actors, then a shift of the entire liability to Insulating & Materials would more closely resemble indemnification; or even if Marathon was culpable but had already assigned the ultimate risks to a third party, which is the essence of an insurance contract, the shift would be readily identifiable as an indemnification.

tial, prospective judgment. Without an Illinois Supreme Court judgment on the matter, we again must decide this issue consistent with the conclusion that court would likely reach.[10]

 Section 2(c) of the Contribution Act provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in amount of the consideration actually paid for it, whichever is greater.

Ill.Rev.Stat. ch. 70. Obligatory benefits paid by an employer to an employee pursuant to workers' compensation, however, derive from a source collateral to the alleged tort and as such are not deducted from a later judgment. Since the workers' compensation benefits are paid pursuant to statutory dictate, without regard to negligence,

> [n]o injustice is done to a person negligently injuring another in requiring him to pay the full amount of damages for which he is legally liable without deduction for compensation which the injured person may receive from another source which has no connection with the negligence, whether that source is a claim for compensation against his employer, a policy of insurance against accidents, a life insurance policy, a benefit from a fraternal organization or a gift from a friend.

*Bryntesen v. Carroll Construction Co.,* 27 Ill.2d 566, 568, 190 N.E.2d 315 (1963) (citation omitted).

That benefits paid under the workers' compensation scheme are not subject to set-off is easily understood. The employer is compelled to pay the benefits regardless of whether it was negligent or not. In return, the employer takes a lien for the total amount of benefits paid on any judgment or settlement the employee may later obtain. Accordingly, the injured employee is fully—but not doubly—compensated; the tortfeasor pays for the injuries for which it is responsible and the employer recovers so much of its workers' compensation payments as is attributable to the tortfeasor's negligence.[11]

 This same rationale does not extend to a settlement in which the employer agrees to forgo its statutory lien, however. In that instance the employer is voluntarily exchanging its lien for a covenant not to sue from the injured employee. The employer is not legally required to surrender its lien and only does so for the precise reason that workers' compensation payments are not set off; the settlement which incorporates the employer's lien bears on its putative negligence. While a settlement does not admit negligence, it absolves the employer from any further liability which could result from a finding that it was negligent. In this regard the lien represents a form of consideration that in principle is indistinguishable from a cash settlement or some other form of compensation. Moreover the underlying policy of disallowing a set-off for workers' compensation benefits is not implicated when the employer integrates the surrender of its statutory lien in a covenant not to sue. In the former instance, the employer remains subject to suit in tort,[12] while in the latter the employer is released from further liability as a direct result of the settlement. Additionally the Illinois policy against double recovery would be upset were the value of the lien not set off because the plaintiff would receive the value of the lien plus later judgment or settlement. In contrast, workers' compensation benefits are paid to

---

**10.** While the Illinois Supreme Court has supposedly heard similar arguments in a comparable case, *Wilson v. Hoffman Group, Inc.,* 122 Ill.2d 596, 125 Ill.Dec. 239, 530 N.E.2d 267 (1989), it has yet to decide this issue.

**11.** If the employer was also responsible for the employee's injuries, it too may be liable in tort. *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984).

**12.** See *supra* note 11.

an injured employee subject to the future exercise of the employer's lien on a judgment or settlement.

Stifle offers semantic examples from Illinois cases in which the value of a surrendered employer's statutory lien is allegedly not included in the sum of consideration offered in exchange for a covenant not to sue. These examples are at best ambiguous and inconclusive. For instance, in *Doellman v. Warner & Swasey Co.*, 147 Ill.App.3d 842, 101 Ill.Dec. 366, 498 N.E.2d 690 (1st Dist.1986), while assessing a settlement to determine whether it was made in good faith, the Illinois Appellate Court noted that "the plaintiff had received a total settlement of $203,333.34 ($145,000.00 from [codefendant] DSC, of which the appellee [employer] funded $140,000.00, and $58,333.34 from [the appellant manufacturer]), plus a waiver of the workers' compensation lien." *Id.* at 850–851, 101 Ill.Dec. 366, 498 N.E.2d 690. Stifle contends that although the *Doellman* court was aware that Doellman had received at least $56,925.23 in workers' compensation benefits, it chose not to include the lien value in its total settlement figure because the court did not consider it part of the consideration of the settlement.

Earlier in the *Doellman* opinion, however, the court concluded "that [the employer] surrendered value in consideration of the release from DSC's contribution complaint: [the employer] paid $140,000 for that release, which DSC turned over to the plaintiff. [The employer] also surrendered its workers' compensation lien on plaintiff's recovery, a value of at least an additional $56,000." 147 Ill.App.3d at 850, 101 Ill. Dec. 366, 498 N.E.2d 690. This portion of the *Doellman* opinion does not support Stifle's argument. In still another case the Illinois Appellate Court, First District, analyzed "a settlement in the amount of $136,089.70, which represented an offer of $105,000 together with a waiver of lien for $31,089.70 for workers' compensation paid." *Nogacz v. Procter & Gamble Mfg. Co.*, 37 Ill.App.3d 636, 643, 347 N.E.2d 112 (1st Dist.1976). As in *Doellman*, this earlier case took note of the amount of lien waived by the employers.

But what is the value of the lien for purposes of a setoff? Marathon urges a set-off in the amount that the lien is now worth, *viz.*, all the workers' compensation payments received by Stifle, while Stifle argues that the set-off should be zero, which he argues is what the lien was worth at the time he and Insulating actually settled.

If not constrained by Illinois law, we would be tempted to conclude that neither party is correct. As a general matter, consideration received by a plaintiff in settlement should be appraised at its worth at the time of settlement. The lien certainly had value at the time of settlement. It was merely unclear whether the full extent of its value would ever be realized, and its efficacy was contingent on a later settlement or judgment for Stifle. Nonetheless, the lien had a potential for value. Why else would it be incorporated in a settlement agreement? But the lien's value, properly analyzed at the time of the Stifle–Insulating settlement, should not be valuated by its later maturated value, but rather should be discounted to its then present value. Also, at the time of settlement there was the possibility that Stifle would not prevail in his suit against Marathon, or would obtain a judgment or settlement for an amount less than the total workers' compensation payments made to Stifle. Consequently, the lien's value should be discounted not only by time, but also by the chance that Stifle would later be successful as well as the degree of that success.

Although discounting the value of the lien may be strictly proper, Illinois law, reflecting valid policy concerns, would apparently favor a set-off in the full amount of the lien. While the Illinois courts have yet to consider how to valuate a workers' compensation lien, several decisions considering "platform loan" agreements provide apt analogies. The Illinois Supreme Court first considered such agreements in companion cases, *Popovich v. Ram Pipe & Supply Co.*, 82 Ill.2d 203, 45 Ill.Dec. 167, 412 N.E.2d 518 (1980), and *Palmer v. Avco Distributing Corp.*, 82 Ill.2d 211, 45 Ill. Dec. 377, 412 N.E.2d 959 (1980). In *Popo-*

*vich,* the plaintiff and an alleged tortfeasor's insurance agent entered into a loan agreement. The agreement provided that the insurance agent, on behalf of the alleged tortfeasor, would loan $20,000 to the plaintiff in exchange for the plaintiff's dismissing his claim. The plaintiff would be required to repay the loan only in the event that a later judgment or settlement in excess of $20,000 would be obtained against the other defendants, and then only "on a pro-rata basis." The plaintiff subsequently obtained a $35,000 judgment, thus requiring plaintiff to pay $15,000 to the lender. The Illinois Supreme Court, citing "the policy against double recovery by tort plaintiffs," *Popovich,* 82 Ill.2d at 208, 45 Ill.Dec. 167, 412 N.E.2d 518, determined that the $35,000 judgment for plaintiff should be set off by $5,000, which represented that portion of the loan that the plaintiff was not required to repay. A similar loan scheme was treated comparably in *Palmer v. Avco Distributing Corp.,* 82 Ill.2d 211, 45 Ill.Dec. 377, 412 N.E.2d 959 (1980). Moreover in *Webb v. Toncray,* 102 Ill.App.3d 78, 57 Ill.Dec. 757, 429 N.E.2d 874 (1981), the Appellate Court, Third District, applying the same reasoning, set off a loan agreement which exceeded the judgment award, thus excusing a tortfeasor's liability. In *Webb,* the settling defendant loaned the plaintiff $9,000, repayable only if the plaintiff recovered in excess of $20,000 from a co-defendant. The plaintiff ultimately obtained a judgment for $6,000, consequently entitling the plaintiff to keep the entire $9,000 loan amount. The court found no basis for refusing to set off the entire judgment by the loan amount, concluding that the "plaintiff retains 1½ times the amount of damages which the jury determined was sufficient to compensate him for his injuries.... [and] will not be heard to complain about the measure of damages recovered by him merely because [the defendant] is benefited by the voluntary payment of [the settling party]." *Id.* at 81, 57 Ill.Dec. 757, 429 N.E.2d 874.

The reasoning underlying the platform loan agreement cases applies to this case as well. In those cases, rather than discounting the loan agreement down to its value at the time of settlement, which would have incorporated the risk that the plaintiff would prove unsuccessful in his efforts against the other tortfeasors, the Illinois courts simply set off the ultimate value of the loan determined at judgment. The same calculus applies here. Just as the full extent of the loan was unknown until judgment, at which time the face value was set off, so too the value of the workers' compensation lien was not clear until judgment. Similarly, Stifle will still be entitled to his full measure of damages, since the $180,000 verdict will only be lessened by his $10,000 settlement with Marathon plus the amount of workers' compensation benefits already received and subject to the employer's lien. Instead of Insulating's levying on Stifle's judgment, the settlement with Insulating essentially allows Stifle to levy upon his own judgment, and this value is to be set off from the ultimate determination of the full and complete extent of his damages, which is the $180,000 verdict. Following the reasoning of the Illinois courts, the ultimate value of the workers' compensation lien, as well as the $10,000 Insulating paid Stifle to settle his claim, should be set off from the judgment against Marathon.

## III. Conclusion

Although the issues before us have yet to be finally determined by the Illinois Supreme Court, there are more than sufficient bases and indications to arrive at a decision. The adoption of comparative negligence, the Contribution Act and the Anti-indemnity statute together foreclose any possible means of express indemnification among joint tortfeasors in the context before us. Permitting express contractual indemnification among joint tortfeasors, each of which is singularly responsible for the resulting injury, would necessarily indemnify a tortfeasor for his negligence in violating the Structural Work Act. Accordingly, Marathon may not seek indemnity from Insulating for its own statutory negligence. But Marathon's liability should be set off by the amount of consideration re-

ceived by Stifle in his settlement with Insulating, including the full amount of the workers' compensation benefits. The employer's lien was voluntarily offered by Insulating in consideration of Stifle's covenant not to sue. As such, it is not just a collateral source of compensation such as employee-granted benefits.

The decision of the district court is affirmed insofar as it denied indemnity to Marathon but is reversed and remanded to permit Marathon to set off the worker's compensation benefits paid to Stifle by Insulating.